ILLINOIS BANKERS LIFE ASSOCIATION ET AL.

*v.* ARMSTRONG.

[No. 14,715. Filed December 10, 1934. Rehearing denied April 2, 1935. Transfer denied October 21, 1935.]

698

*Cox & Adams, Robert A. Adams,* and *Hatfield & Roberts,* for appellants.

*McDonald & McDonald,* and *Sanford Trippet,* for appellee.

SMITH, C. J.—Appellee brought this action against appellant by a complaint in one paragraph to recover damages for breach of contract.

The complaint alleges in substance that on the 5th day of October, 1927, appellant issued to appellee a certain insurance policy in consideration of the payment of quarterly premiums thereon in the sum of $35.05, and said policy of insurance is made a part of the complaint; that by the terms of the policy appellant agreed:

" 'upon receipt of due proof that the insured is totally and permanently disabled before aged sixty, as defined under "Total and Permanent Disability" herein, . . . the Association agrees to waive premium payments hereunder as they become due and to pay a life income to the insured of Fifty Dollars per month, beginning six months after receipt of proof.'

"Said Total and Permanent Disability is, by the terms of said policy, defined as follows:

" 'Said disability must be such that there is neither then nor at any time thereafter any work, occupation, or profession, that the insured can sufficiently do or follow to earn any wages, compensation or profit.' "

The complaint further alleges that on or before June 1, 1928, while said policy was in full force, and appellee was under the age of sixty years, he suffered a total and permanent disability which rendered him wholly and permanently unable to do or follow any work, occupation, or profession to earn any wages, compensation, or profit; that prior to this the appellee for more than seven years was manager and owner of an automobile garage and agency, and that he depended upon said occupation alone for his livelihood, and the support of himself and family; that ever since such disability he had been wholly, continuously and permanently prevented from engaging in any occupation, or performing any work for wages, compensation, or profit; that he is 32 years of age with a life expectancy of more than 33 years; that up to the time of his disability he performed all conditions of the contract, and paid all premiums required by the policy to be paid; that on the first day of March, 1929, he gave due notice to appellant, and made due proof of his disability, and requested appellant to pay the monthly benefits due him under the terms of the policy, but that the appellant refused to pay the same, and refused to waive payment of the premiums becoming due after receipt of due proof of the disability from appellee, and wrongfully lapsed said policy for non-payment of the premium due on July 5, 1929, and wholly and wrongfully renounced and repudiated its said policy, and denied all liability thereunder; that, by reason of said repudiation of said contract of insurance, appellee was damaged in the sum of $25,000, and prayed judgment therefor.

It is further alleged in the complaint that Gertrude Armstrong, who was made a party defendant to the complaint, is the wife of appellee, and the beneficiary named in the policy as being entitled to the benefit therein provided upon the death of the insured. And

the complaint asked that she be made a party to answer as to her interest therein, and alleges that she has no interest in said policy so long as appellee continues to live.

Gertrude Armstrong was defaulted by appellee, and the court found that she had no interest and rendered judgment against her that she had no interest in the action, thus leaving but two parties to the action, appellant and appellee herein.

To this complaint appellant filed answer in general denial which closed the issues. The cause was tried to a jury which returned a verdict in favor of appellee in the sum of $7,500 upon which verdict the court rendered judgment against appellant for said sum together with costs.

Appellant seasonably filed its motion for new trial which was overruled by the court, this action of the court being the only error assigned for reversal.

The motion for new trial sets up certain grounds questioning the giving of certain instructions by the court of its own motion and certain instructions requested by appellee, and the further grounds:

"(g) The verdict of the jury is not sustained by sufficient evidence; (h) the verdict of the jury is contrary to law."

We are met at the threshold of this case by certain objections upon the part of the appellee that the instructions and evidence are not in the record, and that the record does not disclose that appellant's motion for new trial was overruled.

As to the last objection, the record discloses that "defendant's motion for new trial was overruled." Appellee contends that inasmuch as there were two defendants the record does not affirmatively show that it was appellant's motion that was overruled. This is not tenable, for the court at the request of appellee defaulted the defendant, Gertrude Armstrong, and rendered judg-

ment against her that she had no interest in the action. She was not a party to the proceedings thereafter, and consequently was not a party to the judgment finally rendered. The only defendant left in the case at the time the motion for new trial was overruled was the appellant herein, the Illinois Bankers' Life Association.

Appellee says that the evidence is not in the record because there is no showing that the transcript was filed in this court within sixty days after the filing of appeal bond, or within 180 days after overruling the motion for new trial. We think the record sufficiently shows that the transcript was filed in this court within the time, and that the appeal is properly before this court.

Appellee also claims that the bill of exceptions containing the evidence is not properly in the record for the reason that the same was not on file and a part of the record at the time that appellant filed its praecipe for the transcript herein. The praecipe was filed with the clerk May 13, 1932, and the bill of exceptions containing the evidence was filed June 3, 1932, or some three weeks after the filing of the praecipe. It is true that the statute (Sec. 716, Burns Ann. St. 1926; sec. 496, Baldwin's Ind. St. 1934) requires the clerk, upon the filing of a praecipe, to "forthwith make out . . . a transcript of the record." The transcript was made out by the clerk, and the certificate shows that the original bill of exceptions containing the evidence was properly filed within the time and included in the transcript. It can make no difference whether the praecipe was filed before the bill of exceptions or after. As long as the bill of exceptions is included in the transcript and properly certified to by the clerk, this is sufficient. We hold, therefore, that the evidence is properly in the record in this cause. *Ogle* v. *Colbert* (1922), 79 Ind. App. 13, 137 N. E. 63.

Appellee raises the question that the instructions are

not in the record, and contends that no question involving the instructions can be considered. The instructions given by the court, including those of the court on its own motion and those tendered by appellee, were attempted to be brought in the record under the provisions of the section 586, Burns Ann. St. 1926, §2-2010, Burns 1933, §343, Baldwin's Ind. St. 1934. As to the instructions given by the court of its own motion, the statute requires that such instructions shall be in writing, when either party has properly requested that the court instruct the jury in writing, . . . and when given in writing shall be numbered consecutively and signed by the judge. These instructions were in writing and signed by the judge, and were filed with the clerk at the close of the instructions to the jury. But the instructions tendered by appellee and given by the court are not in the record, and hence no question is presented thereon. The statute above quoted provides that all instructions tendered by either party,

". . . shall be plainly written and numbered consecutively and signed by the party or his counsel. The court shall indicate, *before instructing the jury, by a memorandum in writing,* at the close of the instructions so requested, the numbers of those (to be) given and of those (to be) refused, and such memorandum shall be signed by the judge."

The record does not disclose that there was a compliance with this statute in this respect, but affirmatively shows that no such memorandum was made or signed as required. Hence, the instructions tendered by appellee and given are not in the record.

All of the instructions given by the court not being in the record, no question can be raised upon the giving of any of such instructions, and precludes our consideration of them. *Morgan Construction Company* v. *Dulin* (1916), 184 Ind. 652, 656, 109 N. E. 960.

This leaves for our consideration the questions whether the verdict is sustained by sufficient evidence, or is contrary to law.

We think a brief summary of the facts as disclosed by the record is necessary to the proper determination of this appeal.

On the fifth day of October, 1927, appellee had issued to him a policy of insurance by appellant which provided for life and total and permanent disability benefits. There is evidence to show that about the first of June, 1928, appellee had a nervous breakdown, and for many months was treated by numerous physicians for various diseases. There was ample evidence to show that appellee suffered much pain from numerous diseases from then until the time of the trial of this case; that he was 32 years of age, and had a life expectancy of over 33 years; that prior to June, 1928, he had been actively engaged in the garage and automobile business, including sales of automobiles, and had in his employment a number of persons who were engaged in the work. From that time on, he was never able to take charge of his business, and only at times was able to go to his place of business, and then for a short time only. This condition existed until February 7, 1929, when appellee advised the appellant in writing that he was totally and permanently disabled, and requested its representative to call upon him, or furnish him some blanks and full particulars of just what had to be done, and referred appellant to two doctors at Evansville, Indiana. On February 15, 1929, he wrote another letter to appellant regarding his total disability advising it that on June 1, 1928, he became totally disabled, and has been unable to return to work since that time, and requested appellant to forward to him blanks and papers to sign "to collect insurance." He received a letter dated February 19, 1929, from appellant in which it acknowledged the receipt of his letter of

February 5, and stated that it had made a careful examination and study of appellee's physical condition; and regretted that he was having such a difficult time with his health, adding "However, all the evidence appears to indicate that you are not permanently disabled, and, in fact, that you are able to be somewhat active and that your further recovery is to be confidently expected;" and some other statements about appellee's disability claim. The letter continued, "We are sure that upon further reviewing the wording of your policy and of the facts of the case you will agree that there is nothing we can do in the premises." In answer to this letter, appellee wrote to appellant on February 21, 1929, in substance that he had again looked over his policy and compared it with other policies, and said, "Therefore we feel that we are entitled to the benefits. . . . We do not know who you made your investigation with or who made the same for you but we wish to inform you that we are totally disabled and are doing no work that we are receiving any compensation for as per instructions in your policy."

After writing this letter, appellee received a letter from appellant February 26, 1929, part of which reads as follows:

"The position which we have taken in your case is entirely due to the fact that competent medical men have expressed the opinion that there is strong probability of your recovery, and there is present evidence of your ability to pursue your usual work to some extent. Under these circumstances it seems to us out of place to register a claim under the permanent disability provision of your policy, but since you seem to want to submit further evidence, we are handing you herewith our usual blanks used in connection with such matters, which call for certain information from yourself, from a friend and from two competent physicians. It will, of course, be understood that in furnishing these blanks we in

no respect waive our right to reject any claim which may be made under the policy."

In this letter appellant furnished some blanks for appellee to return with the proofs of permanent and total disability.

On March 3, 1929, appellee sent to appellant proofs of total and permanent disability, and enclosed a statement of his own setting out the details of his disability; also statements upon blanks furnished by appellant of Ross C. Scott and Jessie Finch, friends and neighbors in the town of Hazelton, Indiana, where appellee was living. He also sent the affidavits of two doctors, one of which said that he did not believe appellee would be able to perform his duties; and the other that, on the basis of his examination, and his knowledge of the case, it was his opinion that the claimant is totally disabled and will continue to be permanently unable to engage in any gainful occupation or to perform any work for money compensation. This latter statement was embodied in a question to the doctor, and was answered by him, "yes."

After sending the proofs on March 4, 1929, appellee did not hear from appellant until after March 19, 1929, when appellee's lawyer wrote to appellant asking why appellee had received no reply or remittance on his claim. On March 26, 1929, appellant wrote to appellee's lawyer denying liability, and saying that the claim for disability benefits had been disallowed "for the reason that Mr. Armstrong's physical condition, as disclosed to us by reports and medical examination, does not bring him within the terms of the policy for such benefits."

On July 17, 1929, appellee's lawyer again wrote to appellant asking it to advise him of the status of appellee's policy. A reply was received dated July 19, 1929, in which appellant stated that appellee was paying his premiums on a quarterly basis, and that the last one received from him was credited to his account on April

5, and paid his insurance to the fifth day of July, and that the last day for accepting the next payment would be August 5, 1929. On December 12, 1929, appellee wrote to appellant asking for information as to the status of his policy, issued October 5, 1927, which letter has pencil notations on it as follows: "Lapsed 7/5/29 Last 1/4 prem. paid 4/5/29 Lapsed 7/5/29 Grace 8/5/29."

On December 23, 1929, appellant wrote appellee as follows:

"We regret to advise the above policy was allowed to lapse by reason of the failure to pay the premium due July 5, 1929. After the grace period of one month following that date the policy became null and void. The policy makes provision for reinstatement upon application and upon submission of evidence showing satisfactory evidence of insurability. I am enclosing herewith a form upon which you may submit application for reinstatement if you are so advised, and upon the conditions set forth in such application."

It was stipulated by the parties that the letters and notice and proof of disability, as shown by these exhibits, were received by the respective parties and produced in court.

The evidence further showed that the appellee had not been paid any disability under the policy; and that his physical condition is such that in a five or ten minute walk his heart would jump to about 133 and his blood pressure run up to 190; that doctors had taken his blood pressure and examined him frequently. There was other evidence given by physicians on behalf of appellee, one of which was Doctor L. H. Gillman, aged 37 years, who testified that he was a graduate from Indiana University, and took a post graduate course in 1924, had three years service with the Government, and since 1928 has been on the staff of the Indiana University School of Medicine; that he examined appellee in his office. He testified to his findings, and said (quoting from appellant's brief) :

"I don't believe this man is able to follow any work, occupation or profession, because of his emotional condition and because of the aortic action of the heart, it is overworked, and because of his blood pressure, I really think that anything that renders exercise, either bodily or emotional exercise, is really dangerous to his life. I don't think I would pass him for insurance in the condition he is now, he is not an insurable risk. Exercise of 25 hops on one foot raised his heart beats from 104 to 144."

There were other witnesses, the wife of appellee and his mother, who testified to his physical condition.

Doctor Gillman was afterwards recalled, and said he thought appellee's condition had its beginning back in 1928.

A Doctor Arthur testified on behalf of appellee that he had practiced medicine for thirty years, knew appellee, and first noticed a change in his health in July, 1928; that he had been called several times to treat him for various ailments, and took X-ray pictures. He said he did not think there was any probability of appellee getting better. In one of his answers to questions in a written statement to appellant, he said that he thought appellee would probably recover if he had complete rest for a year or two but now he believed that it would not help him; that it might help him, but "I don't believe it would cure him." He further testified, "In my opinion, since the first of June, 1928, there has been no work, occupation or profession at which Russell could have earned any wages, compensation or profit that he was able to follow." On cross examination he said, "The way he is going now, his present condition will continue through his whole life, if he goes on the way he is going now, he will not get any better."

Another physician, Doctor Martin, testified that he lived in Boonville, Indiana, and had practiced medicine for over 23 years in Warrick county; that he is acquainted with the appellee, and examined him for the

first time in September, 1930, and detailed at length the condition in which he found him at that time; that he had a rapid pulse, high state of nervousness, and high blood pressure; that he examined him again in December, 1930, and had him examined by some other doctors, and further said, "For him to engage in work or exercise would probably be fatal. In my opinion it would not be possible for him to follow any occupation or profession for earning compensation or profit, it would be dangerous. . . . I would say this condition is permanent. I don't think he will ever be able to do or follow any work or occupation or profession, which he is qualified to follow, by which he can earn wages or a profit. I think that this condition has existed since in June, 1928."

There was testimony as to the physical condition of appellee by several other witnesses, who were neighbors and friends of appellee, which need not be detailed here.

Upon the question as to whether the evidence is sufficient to sustain the verdict and whether the verdict is contrary to law, we deem it unnecessary to extend this opinion to any great extent.

Before appellee can recover upon his complaint he must prove: (1) That he was totally and permanently disabled within the meaning of the policy; (2) that the appellant received due proof of such disability; (3) that appellant repudiated the contract; (4) that appellee accepted said repudiation, and gave notice to appellant of his election to treat the contract as breached and at an end, except for the purpose of ascertaining damages occasioned by such breach; (5) damages.

The question of whether appellant was totally and permanently disabled within the meaning of the policy is a question of fact to be determined by the jury. In the case of *The Indiana Life Endowment Company* v. *Reed* (1913), 54 Ind. App. 450, 467, 103

N. E. 77, this court, having under consideration a similar contract of insurance, said, "Whether he was or was not totally and permanently disabled within the meaning of the policy as above construed, considering all the evidence bearing on the question of disability, is a question of fact to be determined by the court or jury trying the case." (citing authorities)

*Corpus Juris* lays down the same proposition, and says, "It is for the jury to determine whether insured has suffered a total or partial disability, and whether this disability is permanent." 1 C. J. 511, sec. 340.

Whether appellee was totally and permanently disabled being a question for the jury, and the jury having found that he was, and there being legitimate evidence to support such finding, the verdict of the jury as to this question must be sustained.

That the appellant received due proof of the total and permanent disability is beyond question. On March 4, 1929, after he had written to appellant of his disability, appellee furnished to appellant upon blanks sent to him by appellant proof of his total and permanent disability, supplying the affidavits and statements as provided therein, including statements of two physicians. The question whether this proof was sufficient, or "due proof" as provided in the policy had been furnished, is a question of fact for the jury. *Traiser v. Commercial Travelers' Eastern Accident Ass'n.* (1909), 202 Mass. 292, 88 N. E. 901.

There is ample evidence to support the proposition that appellant repudiated the contract. On February 19, 1929, appellant advised appellee that all the evidence appeared to indicate that he was not permanently disabled, and in fact that he was able to be active, and that his further recovery is to be expected. On February 26, appellant again advised appellee in effect that it would be useless for him to register a claim

for disability, but sent him the blanks, and said, "that in furnishing these blanks we in no respect waive our right to reject any claim which may be made under the policy." Following this, appellee sent the proofs as required under his policy. On March 26, appellant again advised appellee that his claim for disability had been disallowed. Some time elapsed, and on December 23, appellant again wrote appellee that his policy was allowed to lapse by reason of failure to pay the premium due July 5, 1929, and that after one month from that time the policy became null and void. Upon this evidence the jury could well have found that appellant repudiated the contract. The appellant stated in express words that the policy had lapsed. This denial of liability justified appellee in treating the contract as breached, and suing for damages as he did. This question was discussed by the Supreme Court of Arkansas in the case of *Aetna Life Insurance Co.* v. *Phifer* (1923), 160 Ark. 98, 254 S. W. 335, 337.

That appellee accepted said repudiation and gave notice thereof is shown by the fact that, in June, 1930, more than six months after the disability occurred, and after the contract had been repudiated, he brought suit for damages by reason of said repudiation by appellant.

In the case of *Indiana Life Endowment Company* v. *Carnithan* (1916), 62 Ind. App. 567, 579, 109 N. E. 851, the court said, respecting a declaration of repudiation similar to that of appellant herein, that such declaration becomes a repudiation only after the promisee elects to treat it as such; that, if he does so elect, it becomes a breach of contract, and he can recover upon it as such.

In the case of *Federal Life Insurance Company* v. *Maxam et al.* (1919), 70 Ind. App. 266, 284, 117 N. E. 801, 118 N. E. 839, this court said:

"The act of bringing an action, or taking legal steps to enforce a contract, amounts to an election by the party not to rescind it on account of anything known to him, and where a party institutes a suit for damages for the breach of an executory contract, his action in so doing is notice to the other party of his election to treat the contract as breached and at an end except for the purposes of ascertaining the damages occasioned by such breach. An election so made is conclusive against the party making it." (cases there cited)

Appellant raises the question that inasmuch as appellee paid the premium to April 5, 1929, he waived his right to claim a repudiation of the contract by appellant. It must be borne in mind that there is evidence to show that appellant lapsed the policy on July 5, 1929, and, on December 23, 1929, declared the same null and void. There could have been no waiver of the repudiation under these circumstances.

There is sufficient evidence to sustain the verdict of the jury, and it is not contrary to law.

Finding no reversible error, the judgment is affirmed.