GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA *v*. BARRY.

[No. 26,931. Filed October 26, 1937. Rehearing denied
December 15, 1937.]

*Hatfield, Roberts & Hatfield,* for appellant.

*Craig & Mitchell* and *Winfield K. Denton,* for appellee.

FANSLER, C. J.—Appellee brought this action to recover benefits for total disability under a policy of insurance. Appellant, by its second and fourth paragraphs of answer, admitted the execution of a policy of insurance upon the life of appellee in the sum of $1,000, which included a provision for the payment of double indemnity in case of accidental death, and for the payment of $10 per month and a waiver of all premiums on the policy upon proof of, and during the continuance of, total disability. The answers allege that the policy was issued pursuant to an application which contains representations that were false respecting the health of appellee, which were material to the risk, and that if the true facts as to the health of the applicant, at the time of the making of the application, had been known, the company would not have issued the policy; that two years and a few months after the issuing of the policy the company discovered the true facts concerning appellee's condition of health at the time of and prior to the application, and that the statements in the application were untrue; that upon said discovery the defendant notified the plaintiff that, because of the false answers in the application, the policy, with respect to total permanent disability benefits, was invalid; that the company repaid to appellee the severable amounts which had been paid under the contract for disability benefits, which he accepted and retains; that he had

paid no premiums for such benefits since that date. Demurrers were sustained to these answers. In an additional answer the same facts are alleged, and in addition thereto it is alleged that appellee then, in writing, requested appellant to change the policy sued upon for a life policy with double indemnity, but without disability benefits, to be effective as of the date of the original policy, and in the same amount, and for the same premium, as the old policy in respect to life and double indemnity benefits, which was done, and the original policy surrendered. The answers differ in their allegations concerning certain matters, which need not be noticed.

Error is assigned upon the ruling upon the demurrers referred to.

It appears that the demurrers were sustained upon the theory that the company had not attempted a rescission of the policy within two years, the statutory period after which a policy of life insurance is incontestable, and that the acceptance and retention of the premiums returned was no defense, even though appellee had failed to tender back the premiums. The statute then in force provided: "From and after July 1, 1909, no policy of life insurance shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state, unless the same shall provide the following: ¿ . . (3) That the policy . . . shall be incontestable after it shall have been in force during the lifetime of the insured for two (2) years from its date, except for nonpayment of premiums and except for violation of the conditions of the policy relating to naval and military service in time of war." Sec. 39-801 Burns' Ann. St. 1933, §9723 Baldwin's 1934. The policy provides that it "shall be incontestable after it has been in force during the lifetime of the Insured for a period of one year from its date of issue, except

for non-payment of premium, and except as to provisions and conditions relating to benefits in the event of total and permanent disability and those granting additional insurance specifically against death from accident, and subject to the provisions of paragraph 16 concerning misstatement of age."

Two questions are presented. Does the statute make the policy incontestable in respect to the disability benefits, notwithstanding a clause in the policy expressly excepting the restrictions and provisions thereto applying? And, if the statute is not a barrier, is the language of the policy so ambiguous that there is no clear provision for the exception?

Appellee contends that, inasmuch as the statute from which we have quoted is a part of an act which provides for the incorporation of life insurance companies and defines their powers, and such companies are by the act authorized to insert total permanent disability and double indemnity features in their contracts, it follows that the incontestability provision must have been intended to apply not only to that part of the contract which affects life insurance, but also to that part which provides for disability benefits. But there are other statutes authorizing the organization of insurance companies. Section 39-101 et seq. Burns 1933 (§9575 et seq. Baldwin's 1934) authorizes the organization of companies to issue policies of insurance upon "vessels, freight, money, goods and effects, on the life or health of any person," and against loss by fire, et cetera. It would seem that it was the legislative intention to deal with all policies of life insurance rather than with the policies of life insurance companies organized under the particular statute. It will be noted that it provides that "no policy of life insurance shall be issued or delivered in this state *or* be issued by a life insurance company organized under the laws of this state, unless . . ." It

therefore was intended to apply to the contracts of foreign insurance companies which were not and could not have been organized under the statute of which the section is a part. Other statutes authorize the organization of companies and the issuance of contracts insuring against disability because of disease or accident, and there is no similar provision covering such contracts. It is therefore but reasonable to conclude that public interest was thought to require that policies upon the life of persons should be protected, and that no necessity was seen for a like protection in the case of policies insuring against disability. The insurance contract in question is severable, and, while it insures the life of appellee, it insures him against permanent disability for a separate and distinct consideration. The risks assumed by the company and the consideration for this separate risk are distinct and severable and might have been written in different contracts. It is as though a company insured the life of an individual and insured his house against loss by fire in the same contract.

While it is true that, where there is ambiguity or doubt as to the meaning of insurance contracts, or other contracts, the preparation of which was under the control of one of the parties, the construction least favorable to the party preparing the contract is adopted, there is no rule or reason for a rule under which statutes affecting contracts should in case of doubt or ambiguity be construed against the insurance company. The statutes are not made by the company. The statute here in question contravenes the common-law right of the company to freely contract with respect to the time in which its policy shall be contestable. Statutes in derogation of the common law are strictly construed, and where there is doubt they will be construed as not changing the common-law rule.

In all of the cases which have come to our attention, dealing with statutes of the character here involved, it has been held that a combination of life and disability policies is to be regarded as two distinct contracts, though contained in one instrument, and that statutory provisions for an incontestability clause for life insurance policies is inapplicable to the disability insurance. *Greber* v. *Equitable Life Assurance Society* (1934), 43 Ariz. 1, 28 P. (2d) 817; *Pyramid Life Insurance Co.* v. *Selkirk* (1936), 80 F. (2d) 553; *Love* v. *Prudential Insurance Co.* (1934), 173 S. C. 433, 176 S. E. 333.

In *Federal Life Insurance Co.* v. *Zebec* (1936), 82 F. (2d) 961, 963, an action to recover double indemnity for the death of the insured, the court considered that, under the Indiana statute, the limitations in the policy concerning contestability applied only to life insurance, and did not apply to the disability provision. The court said: "The rider is 'attached to and made a part of' the life insurance policy and because it contains no disability benefits, but insures only against accidental *death,* it is a policy of life insurance, hence governed by the provisions of the Indiana statute as to incontestability and misrepresentation." It will be noted that the court's language is susceptible of being construed as holding that if there were disability benefits provided for in the policy it would not be a life insurance policy. But in any event, it seems clear that if the action had been for disability benefits, and not for death, the court would have held that the statute did not apply. The appellee cites many cases to sustain the contention that the policy sued on is a life insurance contract and that the statute applies to all of its provisions, including disability insurance. But they do not sustain the contention. All of the cases cited involve claims for death, and it is held that policies, the benefits of which are payable at death, are life insurance policies, notwith-

standing the inclusion in the contract of provision for benefits for disability. None of the cases hold that, in an action for disability benefits, statutory provisions governing life policies apply, even though the contract includes life insurance provisions.

Insofar as it affects the questions here in issue, the policy provides that it shall be "incontestable after it has been in force during the lifetime of the insured for a period of one year from its date of issue . . . except as to provisions and conditions relating to benefits in the event of total and permanent disability. . . ."

Appellant contends that this provision is clear and unambiguous and that it may contest the validity of the policy because of fraud and false statements in the application, so far as its liability for benefits for total disability is concerned, as though those benefits had been contracted under a separate policy. Appellee contends that the clause does not except therefrom any action brought to recover total disability benefits, and does not give the company the right to contest an action brought for total permanent disability benefits, but that it only excepts from the operation of the incontestability clause the *provisions* and *conditions* relating to total permanent disability benefits. He contends that the total permanent disability *conditions* and *provisions* are found in clause 23 of the policy, which defines total disability, and that, under the clause, the company would be limited to the right to show that the insured was not totally and permanently disabled, or that the disability was not within the conditions provided for in the policy, but that it is not permitted to contest the validity of the policy itself. There is a recognized distinction between contesting the validity of a contract and defending against an action upon the contract upon the ground that a situation in which the defendant is liable has not arisen. Under our practice

we are familiar with actions to contest wills and actions to construe wills. The first seek to set aside and destroy the effect of a will because of incapacity of the testator at the time of its execution, or fraud, or undue influence, or the like, which affects the validity of the instrument at its inception. An action to construe a will concedes its validity, but questions the effect or meaning of the language. One who claims property by virtue of a will vesting ownership in him, subject to a condition, must show that the condition has been met, and one who resists his action contends that the condition has not been met, but in no sense do they contest the validity of the will. In the recent case of *Werner* v. *State Life Insurance Co. of Indianapolis* (1937), 104 Ind. App. 27, 37, 6 N. E. (2d) 786, 790, 7 N. E. (2d) 209, the Appellate Court of Indiana quoted with approval the following language from *Sanders* v. *Jefferson Standard Life Insurance Co.* (C. C. A. 1925), 10 Fed. (2d) 143: " 'A provision for incontestability does not have the effect of converting a promise to pay on the happening of a stated contingency into a promise to pay whether such contingency does or does not happen. It cannot properly be said that a party to an instrument contests it by raising the question whether under its terms a liability asserted by another party has or has not accrued. The maker of a promissory note payable one year after date would not contest it by resisting an attempt to enforce it before it was due. We are of opinion that within the meaning of the provision for incontestability, the insurer did not contest the policy by invoking the terms of the double indemnity provision, and that it was open to the insurer to deny the liability asserted on the ground that the contingency in which the double indemnity was payable did not occur'."

Appellee contends that the language of the policy is inadequate to definitely disclose a purpose on the part

of the company to except all policy provisions relating to disability benefits from the incontestability clause. He leans heavily upon *Ness* v. *Mutual Life Insurance Co. of New York* (C. C. A. 1934), 70 F. (2d) 59, and *Stroehmann et al.* v. *Mutual Life Insurance Co. of New York* (1937), 300 U. S. 435, 57 S. Ct. 607, 81 L. Ed. 502, 503, 504. Those cases involve an incontestability clause as follows: "Except for non-payment of premiums and except for the restrictions and provisions applying to the Double Indemnity and Disability Benefits as provided in Sections 1 and 3 respectively, this Policy shall be incontestable after one year from its date of issue. . . ." The section 1 referred to related to double indemnity, and defines the injury to which the insurance applied, specified necessary proof, and optional modes of settlement. Section 3 defines total and permanent disability and states when benefits shall become effective, what they shall be, and when premiums will be waived. It also specified what shall be considered to be permanent disability, when proofs may be demanded, etc. It is said in the latter case (p. 438) : "Neither §1 nor §3 contains anything relative to fraud in obtaining the policy or the effect of false statements in the application." The Ness case was decided upon the theory that, by including as excepted from the incontestability clause only sections 1 and 3 of the policy, a clear intention was indicated to exclude everything else from the exception, and therefore that the policy could only be contested upon some grounds found in sections 1 and 3 of the policy. It is apparently recognized that the provisions of sections 1 and 3 deal merely with definitions of, and limitations upon, the coverage or risk, and not with matters which might be involved in a defense which questions the validity of the policy. But it is pointed out that there is some apparent confusion in the authorities as to whether defenses based upon contentions con-

cerning the limitation of coverage or risk are precluded by a contestability clause, and, apparently for the purpose of giving some meaning to the exception, it is concluded that, since the exception covers nothing but the provisions of sections 1 and 3, it was inserted as a bar to a construction of the policy which would prevent a contest as to the extent of the coverage. It will be noted that the opinion in the Stroehmann case is put squarely upon the ground that the meaning of the clause is doubtful. This could only be so if the court doubted the view expressed in the Ness case concerning the purpose for which the clause was inserted. A doubt of that view would seem to concede the possibility that the clause was intended as a reservation of the right to contest the validity of the policy. It is pointed out that some policies undertake to make exceptions by words more precise than those under consideration, and that opinions in cases arising upon such policies must be appraised accordingly. The opinions therefore go no further than to construe the limited exception to incontestability in the policies considered.

In *Pyramid Life Insurance Co.* v. *Selkirk, supra,* the Circuit Court of Appeals, Fifth Circuit, had under consideration a suit in equity brought by the insurance company for the cancellation of the disability benefit provision of a "combination policy of life and disability insurance," upon the ground of fraudulent concealment and misrepresentation of material facts concerning the health of the insured in the application and in an application for reinstatement. The incontestability clause in the policy was (p. 553) : "This policy shall be incontestable after one year from date of issue, except for the non-payment of premiums or violation of its terms as to military or naval service in time of war, and except as to provisions and conditions relating to disability benefits and those granting additional insurance

specifically against death by accident, if any." It will be noticed that the language, "except as to provisions and conditions relating to disability benefits," is identical in effect with the language in the policy under consideration, which is, "except as to provisions and conditions relating to benefits in the event of total and permanent disability." The district judge held that the exception in the incontestability clause was merely to preserve to the insurer defenses arising out of the provisions and conditions specifically enumerated in a rider to the policy, which did not include fraud or misrepresentation in the procurement of the policy, and that upon all other grounds, including fraud, the insurer was precluded, and a contest barred, after one year. It appears that the holding of the trial judge was in all substantial respects identical with the contention of appellee, and apparently with the holding of the trial judge in the case at bar. It is said in the opinion (p. 554) that the expression, "provisions and conditions relating to disability benefits," embraces all matters relating to liability for such benefits; those which create the right to receive them, as well as those which will defeat the right, and that, "when the terms 'provisions' and 'conditions' are combined, nothing else relating to liability for disability benefits remains to be referred to"; "that one of the 'provisions' relating to disability benefits is the promise of the insurer to pay them, made in reliance upon the insured's application which forms a part of the policy and in which the false representations are alleged to have been originally made. The 'provision' containing this promise is excluded from the protection of the incontestability clause and leaves such promise open to rescission for fraud in its procurement." It is pointed out that the decision in the Ness case, which was relied upon, rests upon an entirely different clause, which expressly limited the exception,

and that the difference clearly distinguished the situation from that presented in the Ness case. The opinion continues (p. 554): *"Greber* v. *Equitable Life Assur. Soc., supra,* was distinguished in the Ness case on the ground that the incontestable clause in the former 'is very different' from that in the latter, which clearly it is. But the Greber exception is substantially the same as that here involved. It reads: 'Except as to the provisions relating to disability and double indemnity.' "

In *Scales* v. *Jefferson Standard Life Insurance Co.* (1927), 155 Tenn. 412, 295 S. W. 58, 55 A. L. R. 537, it is pointed out that there is a distinction between facts which would warrant a rescission of the contract and facts which would show that the case was not within the risk covered by the contract, and that the incontestability clause relates to the former. Such a construction conforms to the general understanding and the normal meaning of the language used. In the policies in the Ness and Stroehmann cases there is a basis in the limited language of the exception for a doubt as to whether there was an intention to reserve the right to attack the policy for fraud or misrepresentation. There is no such basis here, and, since the exception deals with the right to contest the policy, and, since the word "contest" should be given its usual and ordinary meaning where there is nothing to indicate that a different meaning was intended, it must be concluded that it was intended to refer to actions which would effect a rescission of the contract, and not to defenses which would merely seek a construction of the contract with a view of determining the nature and extent of the risks covered.

The conclusion reached requires the reversal of the cause for error of the court in sustaining demurrers to the second and fourth paragraphs of answer. Subsequent rulings would naturally follow the theory of the

court in ruling upon the demurrers, and the other errors sought to be presented seem to involve the questions already discussed.

Judgment reversed, with instructions to set aside the verdict of the jury and the ruling on the demurrers to appellant's answers, and to overrule the demurrers to the second and fourth paragraphs of answer, and for further proceedings not inconsistent herewith.