ARMSTRONG *v.* ILLINOIS BANKERS LIFE ASSOCIATION ET AL.

[No. 27,461. Filed October 21, 1940. Rehearing denied November 25, 1940.]

604

*Sanford Trippet, T. Morton McDonald* and *Douglas H. McDonald,* all of Princeton, for appellant.

*Robert A. Adams, George L. Denny, Charles C. Baker* and *Telford B. Orbison,* all of Indianapolis; and *Kessinger, Hill & Arterburn,* of Vincennes, for appellees.

Roll, C. J.—This action was instituted by appellant, as assignee, to recover damages for breach of an insurance contract.

The issues were formed by the complaint, an answer in general denial, and a second, third, fourth, fifth, sixth, and seventh paragraphs of affirmative answer. Appellant replied by a denial to the several paragraphs of answer, and also filed an affirmative reply to the second paragraph of answer.

The facts are not in dispute, and are substantially as alleged in the several pleadings.

The court, upon request, found the facts specially and stated conclusions of law thereon. The conclusions of law were favorable to appellees. To each conclusion appellant reserved exceptions. Appellant filed her motion for a new trial which was overruled, and this

appeal followed. The questions on appeal relate to the correctness of the court's conclusions of law and in overruling appellant's motion for a new trial.

The facts as disclosed by the record are substantially as follows:

On October 5th, 1927, appellee, Russell Armstrong, purchased of and from The Illinois Bankers Life Association a policy of life insurance on his life, naming his wife, Gertrude Armstrong, as the beneficiary. The amount payable under the policy as death benefits was $5,000.00. The policy also contained what is known as a "total disability benefits clause."

The pertinent parts of the policy in question read as follows:

"The Illinois Bankers Life Association . . . HEREBY INSURES Russell Armstrong (herein called the Insured) of Hazelton, State of Indiana, AND AGREES TO PAY The Beneficiary Gertrude Armstrong of the Insured, (with the right on the part of the insured to change the beneficiary in the manner provided herein), The Principal Sum of Five Thousand Dollars upon receipt of due proof of the death of the insured, while this policy is in full force, or . . . ."

". . . Upon receipt of due proof that the Insured is totally and permanently disabled before the age Sixty, as defined under 'Total and Permanent Disability' herein; and while this policy is in full force, the Association agrees to waive premium payments hereunder as they become due and to pay a Life Income to the Insured of Fifty Dollars per month, beginning six months after receipt of proof. Any such income payments shall not be deducted from the Principal Sum payable to the Beneficiary at the death of the Insured.

"This insurance is granted in consideration of the application of the Insured, a copy of which is hereto attached and made a part of this contract, and the payment in advance of Thirty-five and 05/100 Dollars, as a first payment, receipt whereof is hereby acknowledged, which pays for the period ending

January 5, 1928, with grace as herein provided, and the payment of all subsequent premiums required under this contract at or before the time when due and payable, during the life time of the Insured, until premiums for twenty years in all shall have been paid. . ."

"TOTAL AND PERMANENT DISABILITY BENEFITS.

"Subject to the following conditions the Total and Permanent Disability benefits provided for on page one shall accrue to the insured upon written request of the insured and upon due proof of disability from any cause as herein set forth occurring before the insured reaches the age of sixty years.

"This provision shall become null and void after the insured has reached the age of sixty years; or during default of the payment of any premium or installment thereof; or during any time, if any, in which the insured is in the army or navy of any country. Said disability must be such that there is neither then or at any time thereafter any work, occupation, or profession that the insured can sufficiently do or follow to earn any wages, compensation or profit, and the Insured must furnish from time to time, not more frequently than once a year, upon request of the Association, evidence satisfactory to the Association of continued total disability; and if the insured shall recover from such total disability sufficiently to enable him to engage in any gainful occupation he shall thereupon resume the payment of full premiums on the next succeeding due date of premium and the monthly allowances herein provided shall cease. . . .

"The consideration for this provision is an additional annual premium of $9.15, which consideration is included in the premium named in this policy but such additional premium will not be required after this provision terminates. . . ."

"TOTAL AND PERMANENT DISABILITY BENEFITS.

"The provision for the disability, double or triple indemnity benefits hereunder set forth may be ter-

minated at any time on the written request of the insured accompanied by this policy for endorsement, and thereafter the premium for this policy shall be reduced by the amount charged for the terminated benefit or benefits.

"Any premium paid to the Association for the aforesaid benefits for any period not covered will be returned. In any event the premium for the double and triple indemnity benefits and that for the disability benefits shall cease on the anniversary of the policy next succeeding the date when the insured attains the age of 60 years."

It is made to appear by the seventh paragraph of answer, that appellant, The Illinois Bankers Life Association, was an assessment association under the law of Illinois, and that in November, 1929, the appellant, the Illinois Bankers Assurance Company, a legal reserve company, reinsured all the risks of the Illinois Bankers Life Association.

By the complaint it is made to appear that in June, 1928, and while said policy was in full force, and while said Russell Armstrong was under the age of sixty years (the insured was 30 years of age when the policy was issued in October, 1927), he, the insured, suffered a nervous breakdown. By reason of this physical condition he then and there became totally and permanently disabled within the provisions of said policy, and became entitled to all the benefits of the policy as above set out without further payment of premiums. Proof of total disability was made and forwarded to the company together with a request that the company fulfill its contract and pay him the monthly benefits due under the terms of the policy, and to waive the payment of premiums thereafter to become due as provided therein. The company refused payment of total benefits and refused to waive premiums, and thereafter lapsed said policy for nonpayment of premiums due July 5, 1929,

and wholly and wrongfully lapsed, renounced and repudiated its said policy of insurance and denied any and all liability thereunder.

It is further alleged in the complaint that in October, 1931, Russell Armstrong instituted an action against the Illinois Bankers Life Association in the Warrick Circuit Court. Gertrude Armstrong, wife of Russell Armstrong and the appellant herein, was also made a defendant in said action. This action was to recover damages for breach of the total disability feature contained in the said policy.

By the second paragraph of answer and by the second paragraph of reply the following facts with reference to the action instituted by Russell Armstrong above mentioned are made to appear. Gertrude Armstrong, appellant herein, was served with process in said action and filed a cross-complaint, wherein she set forth the same cause of action and the same facts as she now pleads in this present action, which facts, in addition to those heretofore mentioned, are in substance as follows: that she was named the beneficiary in said policy of insurance, and that on the eighth day of October, 1930, Russell Armstrong assigned to her all of his right, title and interest in and to the aforesaid policy of insurance, save and excepting as to the total and permanent disability benefits, which assignment is in words and figures following to-wit:

"For Value Received I hereby sell, assign, transfer and set over to my wife, Gertrude Armstrong, her Executors, administrators and assigns all my right, title and interest in and to a certain policy of life insurance, numbered 172533, issued by the Illinois Bankers Life Association, Home Office, Monmouth, Illinois, under date of October 5, 1927, upon my life, together with all rights of action accrued, accruing or which may hereafter accrue to me thereunder, save and excepting herein, how-

ever, all of my right, and title and interest in and to the total and permanent disability benefits provided for by said policy of insurance, and save and excepting also all rights of action accrued, accruing or which may hereafter accrue to me by reason of the breach of said permanent and total disability provisions set forth in said policy.

Witness my hand and seal, at Hazelton, Indiana, this 8th day of October, 1930.

(Signed) Russell Armstrong.

Witness: (Seal)
Helena E. Riley."

By this cross-complaint, Gertrude Armstrong sought to recover upon the alleged breach of the life insurance contract.

Appellee Life Association filed its motion to strike out said cross-complaint for two reasons; (1), "said cross-complaint did not arise out of, nor was it germane to the points of plaintiff's complaint." (2), "Said cross-complaint disclosed on its face that the counterclaim set out herein did not exist at the time plaintiff's action herein was commenced." The court sustained the motion to strike out the cross-complaint of Gertrude Armstrong, and thereafter she was defaulted and adjudged not to have any interest in said cause of action.

It is also disclosed that after said cross-complaint was stricken out, the issues were closed, and thereafter said cause was submitted to a jury for trial resulting in a favorable verdict for Russell Armstrong. This cause was appealed to the Appellate Court of Indiana, and affirmed. See *Illinois Bankers Life Assn.* v. *Armstrong* (1935), 100 Ind. App. 696, 192 N. E. 901.

The third paragraph of answer was similar to the second paragraph in that it alleged the prosecution of said former action by Russell Armstrong, and set forth the judgment entered in that case and further alleged

that the assignment herein mentioned was executed after the commencement of the former action; that said assignment transferred no rights to Gertrude Armstrong; that by the express provisions of the policy no assignment thereof was binding upon the insurer unless a copy thereof was filed in the home office of said insurance company.

The fourth paragraph of answer alleged that Gertrude Armstrong failed to make any claim under said policy as beneficiary; that said policy had lapsed; that said insured was still living, and that no rights existed in plaintiff on said policy.

The fifth paragraph of answer alleged that Gertrude Armstrong failed to make any claim on said policy as assignee thereunder, and that said assignment had never been filed with the company.

The sixth paragraph alleged that the company was advised by certain doctors that the condition of Russell Armstrong herein, was only temporary, and that the disallowance of his claim for disability benefits was based upon a mistake of facts, or upon an erroneous construction of the disability clause, and therefore the action of the company in lapsing the policy would not amount to a repudiation of the contract.

The facts alleged in the seventh paragraph are not material to the questions here involved.

As stated above, the material facts are not in dispute. A study of the briefs prepared by very able counsel, together with the record in this case, has convinced us that the correct determination of the vital issues herein, depends upon a proper determination of the nature of the action filed by Russell Armstrong above referred to.

It is contended by the insurance company that Russell Armstrong in his action to recover damages, sought

to recover all damages occasioned by the breach of the contract. It is their theory that the insurance contract contained but one entire contract and that a breach thereof gave rise to but one cause of action and that by his complaint he sought to recover damages occasioned by the alleged breach.

The original complaint filed by Russell Armstrong was introduced in evidence. Also the cross-complaint by Gertrude Armstrong, together with the court ruling thereon, was introduced.

We have read the original complaint of Russell Armstrong and the cross-complaint with a great deal of care for the reason that, as stated above, a correct interpretation of the theory of the original pleadings will aid in a proper solution to the questions presented at bar.

The original complaint of Russell Armstrong alleged the organization of the Illinois Bankers Life Assurance under the laws of Illinois, and also he alleged the issuance of the policy here in question and made a copy of the same an exhibit and then alleged specifically the agreement of the defendant to insure him against permanent and total disability and sets out in his complaint the provisions of said policy as to total and permanent disability. These specific provisions of the policy are followed by allegations showing total disability. He also alleged that he was 32 years of age with a life expectancy of 33 92/100 years, also that he had performed all of the conditions of the policy on his part to be performed; that in March, 1929, he notified the defendant of his physical condition and requested the insurance company to fulfill its insurance contract and to pay him the monthly benefits due him under the terms of said policy, and that said company failed and refused to pay him any indemnity or benefits whatsoever under said policy and refused to waive

payments of premiums becoming due after receipt of proof of disability and wrongfully lapsed said policy for nonpayment of premiums and wrongfully renounced and repudiated its said policy of insurance and denied any and all liability thereunder.

The cross-complaint filed by Gertrude Armstrong in that action set forth her interest in said policy and specifically set out the assignment to her by Russell Armstrong.

The theory of the complaint filed by Russell Armstrong is not as clear as it might have been. The theory of a complaint must be determined by its leading allegations. It must be observed that Russell Armstrong in his complaint made no specific reference whatever to the life insurance feature of the policy. If it could be said that any reference whatever was made to the life insurance feature, it, at most, was only a general reference to his policy. He did, however, set out the specific provisions having to do with total and permanent disability. Also, he made allegations with reference to his age and life expectancy. He alleged physical conditions resulting in total disability and the fact that proof of such condition was made to the company. He alleged a demand upon the company to pay disability benefits as provided in the policy. It must also be kept in mind that all parties concerned had knowledge that Russell Armstrong had assigned all of his right, title and interest in and to the life insurance feature of said policy including all right of action accrued or that might thereafter accrue thereon. Taking all of the above facts into consideration, we are forced to the conclusion that the theory of the complaint filed by Russell Armstrong was to recover damages resulting from the breach of the total and permanent disability benefit clause of said policy

and was not a complaint to recover for a breach of the life insurance feature of said policy. We are also forced to the conclusion that the theory of the complaint herein, and consequently the theory of the cross-complaint filed by Gertrude Armstrong in the former action, was an action to recover damages for the alleged breach of the life insurance provisions of said contract.

Having thus reached the conclusion thus stated, we are confronted with three questions. First, must the insurance policy here in question be considered as an entire, inseverable contract, or may it be considered as containing two separate and distinct contracts? Second, if the policy herein be construed as embracing two separate contracts, can the insured, after an alleged breach by the insurer, maintain an action on one contract and assign his right of action on the other to a third party? Third, would an action for the breach of one of the covenants constitute former adjudication in a subsequent action for the alleged breach of the other covenant.

As to the first question as above stated, it must be noted that the insurance policy provides a separate and additional consideration for the total disability clause. This clause of the policy reads as follows:

"The consideration for this provision is an additional annual premium of $9.15, which consideration is included in the premium named in this policy but such additional premium will not be required after this provision terminates."

The policy further provides that the disability clause may be terminated at any time upon the written request of the insured and thereafter no premium therefor will be required. It further provides that the premium for total disability shall cease on the anniversary of the

policy next succeeding the date on which insured attains the age of sixty years.

This court, in the recent case of *Guardian Life Insurance Co.* v. *Barry* (1937), 213 Ind. 56, 60, 10 N. E. (2d) 614, had occasion to consider the question of whether a life insurance policy, similar to the one here in question, was or was not a severable contract. In that case the appellee sought to recover damages for total disability under a policy of insurance. The insurance company in its answers admitted the execution of the policy on the life of appellee in the sum of one thousand dollars, which also included a provision for the payment of double indemnity in case of accidental death, and for the payment of ten dollars per month and a waiver of all premiums on the policy upon proof of and during the continuance of total disability. It was further alleged that the policy was issued pursuant to an application which contained representations respecting the health of insured which were false and material to the risk, and that if the true facts had been known at the time the company would not have issued the policy. Two years and a few months after the policy was issued the company discovered the fraud, and thereupon notified the insured that because of the fraud the total and permanent disability provision in the policy was invalid and repaid to the insured the amount of the premiums which the insured had payed under the contract for the disability benefits, which amounts he accepted and retained. Demurrers were sustained to the answers on the ground that the attempted recision of the policy was not attempted within the period fixed by statute in which a policy of life insurance may be contested. Whether or not the statute relating to the period in which an insurance company may contest the validity of an insurance policy applied to the total disability

benefit clauses depended upon whether or not the policy contained but one inseverable contract, or whether it was severable, and constituted two separate and distinct contracts. The court in deciding this question used the following language:

"The insurance contract in question is severable, and, while it insures the life of appellee, it insures him against permanent disability for a separate and distinct consideration. The risks assumed by the company and the consideration for this separate risk are distinct and severable and might have been written in different contracts. It is as though a company insured the life of an individual and insured his house against loss by fire in the same contract."

Appellee herein cites in opposition to the rule the case of *Indiana Life Endowment Co.* v. *Carnithan* (1916), 62 Ind. App. 567, 109 N. E. 851. But the court very clearly pointed out the reason why the policy there in question was not severable and used the following language:

"While the contract of insurance herein involved provided for a liability against appellant resulting from either death or disability, the consideration for both of such liabilities was one and the same premium, and hence such contract was not severable."

A contract is not entire and indivisible because it is embraced in one instrument and executed by the same parties. *Bianchi Bro. Inc.* v. *Gendron*, 292 Mass. 438, 198 N. E. 767, 107 A. L. R. 953. In determining whether the questioned instrument shall be considered as constituting but one entire contract, or as constituting two or more separate and independent contracts, courts and text-book writers have laid down several rules to guide us. It is said—primarily, the question of whether a contract is entire or severable is one of intention, to be determined from the language

which the parties have used, and also the subject-matter of the agreement. Another inquiry is, whether the parties reached an agreement regarding the various items as a whole or whether the agreement was reached by regarding each item as a unit. 2 Williston on Contracts § 863. Another important factor in the determination of the question, is whether the consideration is stated to be given for each part as a separate unit or whether there is a single consideration covering the various parts. In *Thompson* v. *Fisler* (1920), 74 Ind. App. 80, the court said:

> "The test chiefly relied upon is whether the parties have apportioned the consideration on the one side to the different covenants on the other. If the consideration is apportioned so that for each covenant there is a corresponding consideration, the contract is severable. If, on the other hand, the consideration is not apportioned, and the same consideration supports all the covenants and agreements, the contract is entire. 3 Page, Contracts § 1484. A contract is entire when by its terms, nature and purpose, it contemplates and intends that each and all of its parts and the consideration shall be common to each other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment."

**17 C. J. S.,** Contracts, § 334, p. 790, states the rule is as follows:

> "A test of severability which has frequently been applied is to the effect that, if the consideration is single, the contract is entire, but if the consideration is either expressly or by necessary implication apportioned, the contract will be regarded as severable, although this test will not necessarily prevail over other provisions of the contract showing a contrary intent of the parties. So, where the portion of the contract to be performed by one party consists of several and distinct items, and

the price to be paid is apportioned to each item according to the value thereof and not as one unit in a whole or a part of a round sum, the contract will ordinarily be regarded as severable; and this rule applies, although the contract may in a sense be entire, if what is to be paid is clearly and distinctly apportioned to the different items as such and not to them as parts of one whole."

So, in the case at bar, the consideration was apportioned. By the express provisions in the policy the consideration for the total disability clause and double indemnity was fixed and determined. The risks assumed by the company when it executed the policy in question were distinct and severable. We conclude that the contract in question was not one entire contract, but constituted· two separate and ·distinct contracts.

Having reached the conclusion that the contract herein was severable, it necessarily follows that if appellee insurance company breached the contract and denied liability thereunder, two separate and distinct causes of action accrued to Russell Armstrong, provided he elected to treat the contracts as at an end.

In *Federal Life Ins. Co.* v. *Maxam* (1919), 70 Ind. App. 266, 117 N. E. 801, the court discussed the rights and remedies of an insured upon breach of the contract. We quote the following excerpt from that opinion.

"Where one party to an executory contract repudiates it and refuses longer to be bound by it, the injured party has the right to elect to pursue either of several remedies: (1) Where the contract is of such a nature that there may be a recovery for part performance, the injured party may treat the contract as rescinded and recover upon the *quantum meruit* as far as he has performed. (2) He may keep the contract alive for the benefit of both parties, being and keeping himself at all times

ready willing and able to perform his part of the contract, and at the time fixed by the contract for performance, sue and recover according to the terms of the contract on the theory that he has fully performed and discharged all the duties and obligations imposed upon him by the contract, or has done so except as prevented by the other part. (3) Or he may treat the breach or repudiation as putting an end to the contract for all purposes of performance, and sue at once to recover the damages occasioned by such repudiation or wrongful refusal to carry out the contract according to its terms.

"In the latter instance the injured party is not bound to give further notice to the defaulting part of such election before bringing suit, and is not bound to show as a condition precedent to a recovery that he had been at all times ready, willing and able to perform his part of the contract, after the time at which the other party repudiated the contract. If he was not in default at the time of such repudiation, and was adhering to and honoring the contract when repudiated by the other contracting party, he has discharged the obligations imposed upon him, and upon his election to treat the renunciation, whether by declaration or by acts and conduct, as a breach of the contract, the rights of the parties are fixed and the contract is at an end except for the purposes it may serve in such suit for damages for its breach."

The above quotation is supported by a large number of cases, some of which are reviewed in the course of the opinion.

When appellee insurance company notified Russell Armstrong that his policy of insurance had lapsed for nonpayment of premiums and denied any and all future liabilities thereunder, such a declaration became a wrongful act if the said Russell Armstrong elected to treat it as such. If he does so elect it becomes a breach of contract, and he can recover upon it. This he elected to do as far as the total and permanent disability con-

tract was concerned. He instituted his action to recover damages for a breach of that contract, and recovered. As to the other contract contained in said insurance policy, to-wit: the contract to pay $5,000 upon the death of the insured, he made no election whatever. He assigned all his right, title and interest in and to that contract, to his wife, appellee herein. Afterwards she elected to treat the action of the appellee insurance companies as a breach of contract by instituting her action to recover damages occasioned by the wrongful breach of the contract.

Actions for breach of contract may be assigned. In 6 C. J. S. p. 1079, the rule is stated as follows:

"Generally speaking, a person who has a cause or right of action may transfer it to another; and, applying the test usually applied in determining the assignability of a chose in action (*supra* § 5), it may be stated, as a general rule, that, in accordance with the rules relating to the survivability of causes of action . . . would, on the death of the assignor, survive to his legal representative."

The rule is stated as follows in American Jurisprudence, Vol. 4, p. 249.

"The rule of the early common law that a mere chose in action could not be assigned has been substantially modified, both by judicial decision and by statutory enactments, so that to-day in nearly all jurisdictions a right of action arising out of the breach of a contract is assignable, . . ."

See *Ginsburg* v. *Bull Dog Auto Fire Ins. Assn.*, 328 Ill. 571, 160 N. E. 145, 56 A. L. R. 1387, and annotations p. 1391.

Whether or not the present suit could be maintained by appellant as beneficiary, we need not, and do not

decide. The complaint shows upon its face that appellant was the assignee and as such assignee, she has a right to and does prosecute this action for a breach of the life insurance contract.

It is insisted that the judgment in the case of *Illinois Bankers Life Association* v. *Russell Armstrong, supra,* was *res adjudicata* of the present action. We do not think so. Her cause of action was not and could not have been determined in the former action because it was not within the issues as there presented. It will also be noted that appellant did file a cross-complaint in that action, but it was stricken out on motion of appellees. Appellants cause of action was for a breach of a separate contract from the cause of action pleaded by Russell Armstrong in the former action. As heretofore determined, the policy on insurance contained two wholly separate contracts, one of insurance, and the other, a contract of indemnity against total and permanent physical disability and a recovery by Russell Armstrong on his cause of action in no wise affected the right of appellant herein to recover for a breach of the life insurance contract. Under the allegations of the complaint in the former suit by Russell Armstrong, he sought to and did recover damages resulting from the wrongful repudiation by the insurance company of its contract of indemnity against total and permanent disability. Russell Armstrong made no election as to the life insurance contract; he instituted no action, took no steps whatever on his life insurance contract. After he instituted his action to recover damages for the breach of the total disability benefit contract, he assigned the life insurance contract, together with all right of action thereon, to his wife. This being a distinct cause of action on a separate and

different contract, we conclude that the former judgment is no bar to the present action.

For the reasons above stated, the judgment of the trial court is reversed. Judgment reversed with instruction to sustain appellants motion for a new trial.

NOTE.—Reported in 29 N. E. (2d) 415, 131 A. L. R. 769.

## ON PETITION FOR REHEARING.

ROLL, J.—Appellees have filed their petition for rehearing in this cause, and therein called our attention to a misstatement of fact on page 4 of the original opinion as filed with the clerk wherein it was stated as follows:

> "It is further alleged in the complaint that in October, 1931, Russell Armstrong instituted an action against the Illinois Bankers Life Association in the Warrick Circuit Court."

This statement is erroneous. The record shows that the action by Russell Armstrong was instituted on December 31, 1929, and judgment in his favor was recovered in October, 1931. In this connection it should be clearly stated that the assignment by Russell Armstrong to Gertrude Armstrong, mentioned in the opinion, was executed after Russell Armstrong had instituted his action against appellees as above set out. This error is not, however, controlling.

The questions presented by appellees in their petition for rehearing were carefully considered in the preparation of the original opinion, and we have again examined the questions presented and find no occasion to modify the opinion except as herein made.

Rehearing denied.

NOTE.—Reported in 29 N. E. (2d) 953.