Day, J.
 

 In the trial court and in the Court of Appeals the parties stood in relatively the same position they do here, and will be referred to respectively as plaintiff and defendant. The contractual relations between these parties, out of which this controversy grows, rest upon letters, telegrams, and other written documents concerning the purchase of lath, together with a certain verbal agreement entered into on March 15, 1919, in the city of Cleveland, between the witness Jones, on behalf of the defendant, and the witness Bernhard, on behalf of the plaintiff, the substance of which was that plaintiff should ship one car at a time subject to 2 per cent, discount 5 days after arrival or unloading, “and that this arrangement must apply on any and all business that we did with them until it was changed.”
 

 The question for solution is fairly and frankly stated in the brief of counsel for plaintiff in error, in the following language:
 

 “There was no question but that the defendant, the Lake Erie Lumber & Supply Company, owed Huntington & Finke Company for the carloads of lumber sued for. There was a credit for freight paid, which was not questioned, so that the case went to trial wholly on the question of the right of the Lake Erie Lumber & Supply Company to recover on its cross-petition. Its whole claim was grounded upon the proposition that where parties.
 
 *494
 
 enter into separate and distinct contracts the failure of one party to perform any one of the contracts affords no legal excuse to the other party to refuse performance under the other contract, and, applying that to the situation in the case at bar, it was argued that since the Lake Brie Lumber & Supply Company had placed two distinct orders with Huntington & Finke Company, and which it was claimed had been accepted by Huntington
 
 &
 
 Finke Company, and since the default in paying for cars related to cars that were shipped from Buffalo and not shipped under either of the orders above referred to, but under a separate and distinct order, that the failure to pay for those cars did not justify Huntington & Finke in declining to make further shipment under the other orders theretofore given, and the case was decided in the common pleas court upon the application of that principle and was affirmed by the Court of Appeals. * * *
 

 “The whole case rests upon the question of whether the Buffalo company, having grounded its deals with the Cleveland company upon the underlying arrangement of one carload of lumber at a time and 5 days’ credit and then cash payment, could be compelled to continue shipment under one order or another when the Cleveland company had violated, as it had admittedly, that fundamental arrangement.
 

 “If we are right about it, then the judgment in this case is unquestionably wrong. If the court was right in applying the principle of separate and distinct contracts to a situation of this kind, then the judgment, so far as this court is concerned, prob
 
 *495
 
 ably would have to stand, as its accuracy, in that event, would rest upon an inquiry into the facts and the weighing of the evidence in the case on the amount of damages.”
 

 The decision of this case turns upon the point whether or not the agreements between the parties are to be construed as an entirety or as separable or separate contracts. If they constitute an entire contract, then the breach of the buyer, if he was in default, would prevent his recovery of damages for the rescission of the seller; if they are separate contracts, then the seller cannot repudiate his obligation upon some contracts even though the buyer is in default as to other contracts.
 

 An examination of the record discloses that the contractual relations of these parties may be grouped under five heads — first, order No. 2733, given in January, 1919, for five cars of lath; second, order No. 2933, given June 18, 1919, for five cars; third, the carload of lath shipped September 27, 1919, and received by defendant; fourth, the order for carload on October 14, 1919; and, fifth, the order for carload on November 1, 1919. It is the claim of the plaintiff in error that all of these contracts or orders for lath are subject to the arrangement of payment as made March 15, 1919, between Jones and Bernhard, that when one car was not paid for within the five days after unloading no additional car was to be shipped, and “that this arrangement must apply on any and all business that we did with them until changed.” Therefore, the plaintiff claimed that the agreements were to be construed in the light of a single contract, or, in other words, as an entirety, and that the breach
 
 *496
 
 by defendant which ensued by failure to pay for a car after the expiration of the five days was sufficient justification to relieve the plaintiff from further shipments.
 

 Now it is of course conceded that the parties to these transactions were- the same in each instance, that the subject-matter was always lath, but the date of each agreement was different, and in some instances the kind of lath was different, and in each instance the price was different, the market rising continuously from January to December, 1919. It is therefore apparent, we think, that the contractual relations of the parties were different in each instance, even though the parties were the same and the time and manner of payment the same; that each contract has such different characteristics and attributes that it is to be differentiated from the other contracts. Each agreement as entered into had no relation or reference to future contracts, except that the terms of payment were always the same. We fail to see that the agreement of March 15, between Bernhard and Jones, on behalf of the respective parties, makes any difference as to the question of the separate characteristics of these different contracts, and their divisibility and distinctiveness.
 

 “Authorities agree that in determining whether a contract shall be treated as severable or as an entirety the intention of the parties will control, and this intention must be determined by a fair construction of the terms and provisions of the contract itself. * * * if the consideration is expressly or by necessary implication apportioned, the contract is severable. * * * If the part to
 
 *497
 
 be performed by one party consists of several and distinct items, and tbe price to be paid by the other is -apportioned to each item to be performed, or is left to be implied under the law, such a contract will generally be held to be separable.” 6 Ruling Case Law, 858, Section 246.
 

 A separable contract has been defined in 2 A. L. R., 645, to be “one in its nature and purposes susceptible of division and apportionment, having two or more parts in respect to the matters and things contemplated and embraced by it, not neces • sarily dependent upon each other; the considers tion not being single or entire as to all of its several provisions, as a whole.”
 

 In this case the consideration for the lath was different for each shipment of lath, depending upon the quality and quantity, and the time of payment was by the agreement of parties dependent upon the date that each car was received. Clearly there was no such interrelation as would make the consideration applicable to the contract as an entirety. It is said in 2 A. L. R., 646:
 

 “If the consideration is single, the contract is entire, whatever the number or variety of the items embraced in the subject; but if the consideration is apportioned, expressly or impliedly, to each of these items, the contract is severable.”
 

 There can be no doubt that this consideration was apportioned to the quality and quantity of lath and to each car as it was shipped. It is conceded that under order No. 2733 two cars were shipped and three cars were unshipped; that under order No. 2933, one car was shipped and four cars were unshipped. As to the cars shipped un
 
 *498
 
 der both .orders 2733 and 2933, they were paid for in pursuance, or substantially in pursuance, of the terms of the agreement of March 15, 1919. It thus appears that at the time of the breach complained of in defendant’s cross-petition' as to orders 2933 and 2733, the defendant company was not in default on either, but had paid for cars delivered under the terms of the contract, as modified by the agreement of March 15, 1919. So it must follow that if these transactions constituted a separable contract, or separate contracts, this breach by the plaintiff company in refusing to ship more cars under orders 2933 and 2733 constituted a breach of contract, for which the defendant company was entitled to recover if damages could be shown.
 

 It is the claim of the plaintiff that, where the contract calls for delivery of goods in installments, and payment therefor as delivered, the seller may refuse to deliver subsequent installments until prior installments have been paid for, that if payment is refused he may rescind, and that a party who is himself in default, without any offer to repair such default, cannot insist on performance by the other party as a condition precedent to his performance. This rule does not apply, we think, to a series of contracts that are distinct and separate, even though the terms of payment are the same. Where each order is a separate contract, a failure by the purchaser in respect to one will not justify a breach of another by the seller.
 

 We think the courts below were right, under the admitted and conceded facts of this case, in finding that these transactions amounted to either separate contracts or a separable contract, and that
 
 *499
 
 the plaintiff company was not justified in breaching two of these contracts, even though there had been a breach by the other party of the other parts or contracts..
 

 It is well established that where there are separate contracts between parties, the breach of one of those contracts by one party will not justify a breach of another by the other party; or a breach of a part, in case of a separable contract.
 

 In the case of
 
 Hanson & Parker, Ltd.,
 
 v.
 
 Wittenberg,
 
 205 Mass., 319, 91 N. E., 383, there was an action for damages for breach of a contract to deliver the defendant coal of a certain kind and quality. The plaintiff delivered inferior coal under one contract, which was taken to constitute a breach, and the defendant refused to accept delivery of any of the coal on the second contract on account of plaintiff’s breach of the first contract. It was held:
 

 “Where there are two independent contracts between the same persons for the furnishing of certain goods of the same kind and quality at different times, the fact that the seller has committed a breach of the first contract, by furnishing goods inferior to those required by the contract and by failing upon demand to furnish goods of the kind and quality required, does not justify the buyer in assuming that the seller also will break his second contract for a further supply of like goods, and, although the buyer may be reasonably apprehensive of a like breach of the second contract, he has no right to rescind or repudiate the second contract before it has been broken by the seller.”
 

 To the same effect is
 
 North Coast Lumber Co.
 
 v.
 
 *500
 

 Great Northern Lumber Co.,
 
 144 Minn., 304, 175 N. W., 547, a case involving shipment of lumber under facts very akin to the case at bar. It was held:
 

 “1. The rule that failure of the buyer to make payment when due relieves the seller from making further delivery, does not apply where the seller was in default in making delivery when the payment became due and the price of the goods had advanced and the buyer -withheld only enough to protect him from loss.
 

 “2. Where no time for delivery is fixed, the seller must make delivery within a reasonable time. ’ ’
 

 In
 
 Burgie
 
 v.
 
 Hicks
 
 (D. C.), 203 Fed., 340, the court holds:
 

 “Where a contract for the sale of vinegar was deliverable at the buyer’s option in carload lots, payable 30 days after receipt of each carload, the buyer’s failure to pay for a carload received December 9, 1910, was no excuse for the seller’s breach of contract on December 17th following, by refusing to make further shipments; the buyer on such refusal being entitled to withhold further payment, using the price of the shipment delivered to offset his damages for breach of the contract, or sue for such damages, leaving the seller to counterclaim for the amount due on such shipment.”
 

 Also see
 
 Welsh
 
 v.
 
 Michigan Maple Co.,
 
 161 Mich., 16, 125 N. W., 692:
 

 “Failure to pay for shipments of lumber at the times fixed by a contract of sale, under which it was to be shipped at the rate of 100,000 feet a
 
 *501
 
 week, and to be paid for in fifteen days from the date of each invoice, constitutes only a breach of a severable condition, and does not justify a rescission, in the absence of an intention on the part of the buyer to abandon his contract, or facts authorizing the seller to believe that he so intended.” In
 
 R. C. Bowers Granite Co.
 
 v.
 
 Thomas Farrell & Co.,
 
 66 Vt., 314, 29 Atl., 491, it was held that a contract to sell monuments as ordered and upon specifications to be furnished by the buyers was separable as to each monument; hence the failure of the buyer to pay for one monument did not relieve the seller from his obligation to furnish other monuments as ordered under the contract.
 

 ' In
 
 Myer & Dostel
 
 v.
 
 Wheeler <& Co.,
 
 65 Iowa, 390, 21 N. W., 692, it was held:
 

 “The rescission of a divisible contract will not be allowed for a breach thereof, unless such breach goes to the whole consideration.”
 

 Robertson
 
 v.
 
 Davenport & Patterson,
 
 27 Ala., 574;
 
 Hansen & Linehan
 
 v.
 
 Consumers’ Steam, Heating Co., 73
 
 Iowa, 77, 34 N. W., 495;
 
 Osgood
 
 v.
 
 Bauder & Co.,
 
 75 Iowa, 550, 39 N. W., 887, 1 L. R. A., 655;
 
 Rock Island Sash & Door Works
 
 v.
 
 Moore, Handley Hardware Co.,
 
 147 Ala., 581, 41 South., 806;
 
 West
 
 v.
 
 Bechtel,
 
 125 Mich., 144, 84 N. W., 69, 51 L. R. A., 791, and
 
 Williams
 
 v.
 
 Robb,
 
 104 Mich., 242, 62 N. W., 352, are to the same effect. Other and additional cases might be cited, but the above will serve to illustrate the point.
 

 This being the sole law question in this case, and there being evidence in the case to sustain the finding of the courts below, that this was either a divisible contract or five separate contracts, and
 
 *502
 
 the application of the legal proposition above announced having been correctly made in the trial court, and in the Court of Appeals, we find no prejudicial error in the record. The question of the amount of damages was purely a question of fact, and we are powerless to interfere, unless some wrong application of the law incident thereto was made by the courts below.
 

 For the foregoing reasons, and upon the authorities cited, of the five judges participating in this case Matthias and Allen join with the writer of this opinion in reaching the conclusion that the judgment of the Court of Appeals and the common pleas should be affirmed. Robinson, J., joins in the judgment of affirmance upon the ground that the court of common pleas found as a matter of fact “that the plaintiff breached the contracts,” and the Court of Appeals, affirming the judgment of the common pleas, found “that substantial justice” had been done the party complaining, and the case, turning upon the determination of these issues of fact, was a jury question even though a jury was waived, and this question having been decided adversely to the plaintiff in error this court cannot interfere.
 

 The record disclosing that there has been no misapplication of a proposition of the law to the facts found, the judgment of the courts below should be affirmed.
 

 Judgment affirmed.
 

 Robinson, Matthias and Allen, JJ., concur.
 

 Marshall, C. J., and Jones, J., toot no part in the consideration or decision of the case.