In re Joe Alvin SEXTON, Novena J. Sexton, dba Atomic Oil Company, Sexton Oil Company, Sexton Construction Company, and Sexton Tire Company, Debtors.

AZTEX ENERGY COMPANY, Plaintiff,

v.

The STATE OF TENNESSEE and Leon Steinberg, Trustee, Defendants.

Bankruptcy No. 3–79–00834.
Adv. No. 3–81–0704.

United States Bankruptcy Court,
D. Tennessee.

Dec. 17, 1981.

W. Morris Kizer, Knoxville, Tenn., for plaintiff, Aztex Energy Co.

Brendan Bradley, Howard E. Herndon, Jr., Nashville, Tenn., for the State of Tennessee.

Leon Steinberg, pro se.

1. " 'Proceeds'—...

(1) 'Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a

MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue in this adversary proceeding is whether funds paid pursuant to an insurance policy are proceeds within the meaning of T.C.A. § 47–9–306(1).[1]  Also, at issue is whether the funds payable under the insurance policy constitute contract rights in which the secured creditor has a perfected security interest.

I

On July 10, 1979, Aztex Energy Company (Aztex) executed a security agreement with Joe and Novena Sexton and with Silver Spur Truck Plaza, Incorporated (Silver Spur).  Each of the security agreements grant Aztex a security interest in certain equipment, fixtures, and supplies owned by the Sextons or by Silver Spur.  The collateral is described in the Silver Spur security agreement as

"All of debtors' furniture, fixtures, equipment, supplies, inventory, parts, accounts receivable, contract rights, chattel papers, or instruments, wherever located, of every kind and character, whether now existing or subsequently acquired, whether owned as individuals, tenants by the entirety, proprietors, partners, or otherwise, and including, but not limited to, those items listed in Exhibit "A" hereto; and in any additions and accessions thereto. Debtors further grant a security interest in all furniture, fixtures, equipments, equipment, supplies, inventory, accounts receivable, parts, contract rights, chattel papers and instruments which come into existence during the term of this agreement, and in all the proceeds of all existing and future collateral.  (Proceeds as used in this agreement is defined in T.C.A. § 47–9–306(1)."[2]

Each of the security agreements further provides that the debtor "shall insure the

contract right.  Money, checks and the like are 'cash proceeds.'  All other proceeds are 'noncash proceeds.' "  T.C.A. § 47–9–306(1).

2. The security agreement executed by Joe and Novena Sexton is almost identical.

collateral" and that such insurance "shall be for the benefit of debtor and secured party as their interests may appear." Section IX.

Three financing statements were filed with the Tennessee Secretary of State on July 11, 1979.[3] The financing statements describe the collateral as

> "All of debtor's [debtors'] furniture, fixtures, equipment, supplies, inventory, parts, accounts receivable, contract rights, chattel papers and instruments of every kind and character, wherever located, now existing or hereafter acquired, . . . ."

The box on each statement has been checked to signify that all proceeds of the collateral are covered by the financing statement.

On November 26, 1979, the Sextons filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code.[4] A fire occurred at the Silver Spur Truck Plaza destroying property owned by the Sextons and property owned by Silver Spur on March 23, 1980. This property was insured against fire loss by a policy with Safeco Insurance Company. In payment for the loss of the property, Safeco issued a draft in the amount of $10,007.63.[5]

Aztex commenced the present adversary proceeding by the filing of a complaint on August 19, 1981. The plaintiff claims a superior right to the $10,007.63 draft on two grounds. First, the plaintiff maintains the draft constitutes proceeds of the collateral within the meaning of T.C.A. § 47–9–306(1). Second, the plaintiff contends that monies payable under an insurance policy are contract rights to which its security interest attaches.

## II

Generally, a security interest in collateral continues notwithstanding sale, exchange, or other disposition of the collateral by the debtor and also continues in any identifiable proceeds. T.C.A. § 47–9–306(2). Section 47–9–306(1) defines proceeds as "whatever is received when collateral . . . is sold, exchanged, collected, or otherwise disposed of."

■ Because this court has been unable to locate any cases decided by the Tennessee appellate courts on the question of whether insurance proceeds are "proceeds" within the meaning of T.C.A. § 47–9–306(1), the cases from other jurisdictions must be examined. The court must anticipate the rule that would be applied by the state court if it were confronted with the issue. See *City of Kingsport v. SCM Corporation*, 352 F.Supp. 288 (D.C.E.D.Tenn. 1972); *Cole v. Cardoza*, 441 F.2d 1337 (6th Cir. 1971). In other words, what conclusion would most likely be reached by the Tennessee Courts?

This court has previously decided the issue of whether insurance funds received as a result of the destruction of collateral constitute proceeds of the collateral. *In re Parks*, 19 UCC Rep. 334 (E.D.Tenn.1976). In that case the plaintiff held a perfected security interest in the inventory and fixtures of a sporting goods store destroyed by fire. The plaintiff, however, was not named as loss payee under the insurance policy covering the property. The insurance funds were claimed as proceeds by the plaintiff. The decisions in *Quigley v. Caron*, 5 UCC Rep. 943 (Me.S.Ct.1968), and *Universal C.I.T. Credit Corp. v. Prudential Investment Corp.*, 3 UCC Rep. 696 (R.I.S.Ct. 1966), were found to be "highly persuasive"; hence, the insurance payments

**3.** One statement was filed listing Joe A. Sexton and wife, Novena J. Sexton dba Sexton Oil Company as the debtors. In addition, separate statements were filed listing Joe A. Sexton and Novena J. Sexton as debtors.

**4.** On September 18, 1980, Aztex filed a motion pursuant to 11 U.S.C. § 1112(b) to convert the case to a case under Chapter 7 of the Bankruptcy Code. The case was converted on October

17, 1980, and Leon Steinberg was appointed trustee.

**5.** Two other drafts were issued by Safeco. In addition to the $10,007.63 draft, a draft was issued for $3,700.00 to pay the costs of the clean-up; a $40,000.00 draft was issued to reconstruct the building. Only the draft for $10,-007.63 is at issue.

were held to be not proceeds within the meaning of § 47–9–306(1).

The plaintiff in the present case contends that since *Parks* was decided numerous courts have held that insurance payments are proceeds. According to the plaintiff, these cases are so persuasive that, if the issue were presented to the Tennessee Supreme Court, the court would rule that insurance payments are proceeds within the meaning of § 9–306.

Specifically, the plaintiff relies on *PPG Industries, Inc. v. Hartford Fire Insurance Company*, 531 F.2d 58 (2d Cir. 1976). In *PPG* the debtor had given the secured creditor a security interest in inventory and equipment. The security agreement provided that the debtor was to insure the collateral, paying all the costs thereof and assigning to the secured creditor all rights to receive the proceeds of the insurance policy. However, the secured creditor was not named as a loss payee in the insurance policy. After the collateral was destroyed by fire, the United States claimed the insurance funds by virtue of tax liens filed subsequent to the perfection of the security interest.

The *PPG* court reviewed the cases holding that § 9–306(1) does not extend the definition of proceeds to cover the involuntary destruction of collateral, i.e., *Quigley, supra* and *Universal C.I.T., supra*. However, the court agreed with the district court that any construction of § 9–306(1) "which does not include insurance within the scope of the term 'proceeds' would contravene the express intent of the parties."

*PPG, supra* at 61. In addition, even though the New York legislature had not adopted the 1972 amendment to § 9–306(1) which expressly states that insurance payments constitute proceeds, the court concluded that the amendment is a persuasive indication of the effect § 9–306 was originally intended to have.[6] Therefore, in order to conform with the effect § 9–306 was intended to have, the court held the creditor's security interest in the insurance proceeds was perfected.

However, while the holding in *PPG* was followed by the New York Supreme Court, Appellate Division in *McGraw-Edison Credit Corp. v. All State Insurance Co.*, 24 UCC Rep. 767 (1978) and in *First National Bank of Highland v. Merchant's Mutual Insurance Co.*, 25 UCC Rep. 599 (1978), the New York Court of Appeals in a per curiam opinion implicitly rejected the holding in *PPG*. *First National Bank of Highland v. Merchant's Mutual Insurance Co.*, 28 UCC Rep. 1181, (N.Y.Ct.App.1980). The court adopted the dissenting opinion written at the intermediate appellate level. That opinion held that insurance funds are statutorily excluded from Article 9 of the UCC by § 9–104(g).[7] This reasoning has been rejected by several courts, including the Court of Appeals in *PPG Industries, supra. See Ettinger v. Central Penn. National Bank*, 27 UCC Rep. 1192 (D.C.E.D.Pa.1979).

The Fifth Circuit Court of Appeals followed the holding in *PPG Industries* in construing Florida law. *Paskow v. Calvert Fire Insurance Company*, 579 F.2d 949 (1978). The amendment to § 9–306(1) was regarded as a "persuasive indication" of the

---

**6.** The 1972 proposed amendment to § 9–306 reads as follows:

" 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement."

The addition of the clause regarding insurance payments is discussed in the "Draftsmen's Statement of Reasons for 1972 Changes in Official Text:"

"The new second sentence of subsection (1) is intended to overrule various cases to the

effect that proceeds of insurance on collateral are not proceeds of the collateral...."

31 states have adopted the 1972 amendment; Tennessee has not. Obviously, the adoption (or the rejection) by the Tennessee legislature of the proposed amendment would eliminate future controversies. (As far as the court can determine, the proposed amendment has never been submitted to the Tennessee legislature.)

**7.** "Section 9–104. Transactions excluded from Article. This Article does not apply

.   .   .   .   .

(g) to a transfer of an interest or claim in or under any policy of insurance; . . ."

original intent of that section. The exclusion of insurance funds from Article 9 by virtue of § 9–104(g) was found inapplicable. The court stated that § 9–104(g) was directed not at the insurance of collateral but the creation of a security interest in an insurance policy by making the policy itself the collateral. Therefore, the court held that the proceeds of an insurance policy come within the definition of proceeds in § 9–306(1). Subsequent to the decision in *Paskow*, Florida courts have construed § 9–306(1) to include insurance proceeds. *Kahn v. Capital Bank*, 29 UCC Rep. 289 (Fla.Dist.Ct.App.1980); *Beaver Crane Service, Inc. v. National Surety Corp.*, 30 UCC Rep. 1158 (Fla.Dist.Ct.App.1980). The case of *Brown v. First National Bank of Dewey*, 617 F.2d 581 (10th Cir. 1980), arising under Oklahoma law, also dealt with the issue of whether insurance proceeds are within the definition of proceeds in § 9–306(1). The defendant was given a security interest in inventory, accounts receivable, fixtures and all additions, accessions and substitutions. The security agreement provided that the collateral would be insured for the benefit of the secured creditor, but the defendant was not named as a loss payee. After the collateral was destroyed by fire the debtors filed a petition in bankruptcy and both the secured creditor and the bankruptcy trustee claimed the payments made pursuant to the insurance policy.

The trustee in *Brown* asserted several theories to justify his recovery of the funds.

First, the trustee argued that § 9–104(g) excluded the insurance policy from coverage under Article 9. The court disagreed with this argument:

"As several courts have recognized, section 9–104(g) applies only to the creation of security interests in the insurance policy itself. E.g., *Paskow v. Calvert Fire Ins. Co.*, 579 F.2d 949, 953 (5th Cir. 1978); *PPG Indus., Inc. v. Hartford Fire Ins. Co.*, 531 F.2d 58, 60 (2d Cir. 1976). In the instant case, it is clear the bank does not claim a security interest in the fire insurance policy; rather, it asserts an interest in monies that have already been paid, albeit pursuant to an insurance policy." *Brown, supra* at 583.

Second, the trustee argued, as does the State of Tennessee in the present case, that insurance proceeds are paid pursuant to a personal contract between the insured and the insurance company, and therefore do not attach to or run with the property. If the insurance proceeds arise from a personal contract they cannot constitute proceeds within the meaning of § 9–306(1). Even though Oklahoma follows the personal contract theory, the court rejected the trustee's contention because

"In its usual context, the personal contract rule is applied to deny the claim of a mortgagee to proceeds of a fire insurance contract when the mortgagee was not named as insured in a loss-payee or mortgage clause.... But an important exception to the rule arises if the mortgagor promises to insure the property for the mortgagee's benefit: even though the insurance proceeds are not made payable to the mortgagee, the latter nevertheless acquires an equitable lien on the proceeds to the extent of the indebtedness. (Citations omitted.) This lien is superior to the interests of other general creditors...." *Brown, supra* at 583.

The court concluded that since Oklahoma law would protect the secured creditor's interest against the claims of general creditors there was "persuasive evidence" the Oklahoma courts would not use the contractual theory to deny to the secured creditor the insurance proceeds under § 9–306.

Finally, the trustee urged the *Brown* court to follow *Quigley, supra*, and *Universal C.I.T. Credit Corp., supra*, and hold that § 9–306(1) covers only funds received from the voluntary disposition of the collateral. However, after referring to Okla.Stat.Ann. Tit. 12A § 1–102(1)[8] the court stated that Section 9–306 obviously

---

**8.** § 1–102

"(1) This Act shall be liberally construed and applied to promote its underlying purposes and policies." Okla.Stat.Ann.Tit. 12A Sec. 1–102(1). (T.C.A. § 47–9–102(1) is a comparable statute.)

"was designed to protect a secured creditor's interest in collateral through permutations and substitutions. It seems to us antithetical to the purposes of the UCC to deny priority to a creditor who secured the agreement of the debtor to insure against involuntary loss of the collateral. Thus, we hold that proceeds from casualty insurance on collateral are proceeds of collateral, at least when the parties intend that the casualty insurance redound to the secured creditor's benefit." *Brown, supra* at 584.

In reaching this conclusion, the *Brown* court followed *PPG Industries* and construed the 1972 amendment to § 9–306 as indicative of the effect that section was originally intended to have.

On the basis of the opinions since *In re Parks*, 19 UCC Rep. 334 (1976), was decided, this court concludes that *Quigley v. Caron*, 5 UCC Rep. 943, and Universal *C.I.T. Credit Corp. v. Prudential Investment Corp.*, 3 UCC Rep. 696, no longer represent persuasive authority. The trend of most recent decisions is that insurance proceeds do represent proceeds of collateral within the meaning of § 9–306(1) of the UCC.

The State of Tennessee argues that under Tennessee law an insurance policy is a personal contract between the insured and the insurance company and a secured creditor has no right to the proceeds of such a contract. In *John Weis, Inc. v. Reed*, 118 S.W.2d, 677 (Tenn.Ct.App.M.S.1938), the court stated that

"It is, undoubtedly, the general rule that a mortgagee or the holder of a conditional sale contract has no right to the benefits of a policy taken by the mortgagor, unless it is assigned to him. The contract of insurance is purely a personal contract ... [I]t is well settled that the mortgagee is not entitled to the insurance money in the absence of an agreement on the part of the mortgagor to insure the property for the benefit of the mortgagee." Id. at 682.

■ However, in the situation where the mortgagor has agreed to insure the property for the benefit of the mortgagee, the mortgagee has an equitable lien on the proceeds of the insurance policy. *See Greer v. American Security Insurance Company*, 445 S.W.2d 904 (Tenn.S.Ct.1969). This lien is not a right to obtain possession of the property, rather it gives the holder of the lien the right to subject the property to the satisfaction of the lien. *Podesta v. Podesta*, 189 S.W.2d 413 (Tenn.Ct.App.W.S.1945). The lien also gives the holder of the lien rights in the property superior to the rights of general creditors. *Ralph Rogers & Company v. Reconstruction Finance Corporation*, 232 F.2d 930 (6th Cir. 1956).

■ In *Brown, supra* the Tenth Circuit Court of Appeals discussed the personal contract rule and held that because Oklahoma law, like Tennessee law, would grant an equitable lien superior to the interests of general creditors, an Oklahoma court would not use the contractural theory to deny a secured creditor the protection afforded by § 9–306. This court believes that Tennessee courts would reach the same conclusion.

In 1976 this court believed that the Supreme Court of Tennessee would follow the decisions of the Supreme Courts of Maine and Rhode Island, *Quigley v. Caron, supra*, and *Universal C.I.T. Corp. v. Prudential Investment Corp., supra*. At the present time this court believes that the Supreme Court would follow the later decisions of the Second, Fifth and Tenth Circuits, *PPG Industries, Inc. v. Hartford Fire Insurance Company, supra, Paskow v. Calvert Fire Insurance Company, supra*, and *Brown v. First National Bank of Dewey, supra*, and the Florida State Courts, *Kahn v. Capital Bank, supra, Beaver Crane Service, Inc. v. National Surety Corp., supra*, and hold that insurance payable by reason of loss or damage to collateral is "proceeds." § 47-9-306(1). This court is aware that the cases cited, with one exception, do not involve the rights of a trustee in bankruptcy, and that some of the cases refer to the rights of the secured creditors vis-a-vis the rights of "general creditors." Also, heavily emphasized are "equitable liens." Nevertheless, this court's determination must be based on how it believes the Supreme Court of Ten-

nessee at this time would construe the word "proceeds" as used in Sec. 306(1).

Plaintiff is entitled to the funds in question as "proceeds." T.C.A. § 47–9–306(1).

This conclusion precludes the necessity for determining whether the funds payable under the insurance policy constitute "contract rights," T.C.A. § 47–9–106, under the Uniform Commercial Code.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

Submit judgment within five days.