**In re K. Lowell RITCHEY and Darla L. Ritchey dba The Bake Shop, Debtors.**

**Bankruptcy No. 87–01677.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Jan. 8, 1988.

Howard Hershman, Toledo, Ohio, for Melocream & Park.

Randy L. Reeves, Lima, Ohio, for debter.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Continued Hearing on Debtors' Objection to Relief from Stay by David Parks and Mello Creme, Inc. At the Hearing, the parties had the opportunity to present the evidence and arguments that they wished the Court to consider in reaching its decision. The Court has reviewed the evidence and the arguments of counsel, as well as the entire record in this case. Based on that review, and for the following reasons, the Court finds that the contract for sale of the ongoing doughnut and baked goods business is not separable.

### FACTS

In June of 1985, David L. Parks entered into an agreement to sell his doughnut business to the Debtors, K. Lowell Ritchey and Darla Ritchey. In a contract entitled "Supplemental Agreement", Mr. Parks both individually and as president of Mello–Creme, Inc., agreed to sell the business, fixtures, equipment, name, good will, inventory, and real estate. Some of the assets of the business, including real property, were owned by Mr. Parks individually, the balance being held by Mello–Creme, Inc.. The corporation known as Mello–Creme, Inc. was not transferred to the Ritcheys. Mr. Parks was, and still is, the sole shareholder of Mello–Creme, Inc..

This matter comes before the Court on a Motion for Relief from Stay, but the issues presented primarily center on the question of whether the individual land contracts, and other agreements, entered into by the parties are severable as separate contracts, or are parts of one indivisible contract. If the land contracts are susceptible to division into individual contracts, the Debtors may seek to reject some of the land contracts and retain others under 11 U.S.C. § 365.

The Supplemental Agreement states the purchase price of the business to be Five Hundred Twenty-five Thousand Dollars ($525,000.00). The purchase price is then "apportioned to the following assets of the business" in the Supplemental Agreement. Values are assigned to the different parcels of real estate, to the inventory, and provision are made for the transfer of the equipment, good will, fixtures, and other personal property by means of a Bill of Sale. The Supplemental Agreement contains the following clause:

It is acknowledged by and between the parties hereto that the foregoing documents of transfer are essential to the orderly sale of the business and as such each and every document referred to hereinabove shall be executed in conjuction [sic] with this Supplemental Agreement. In the event that one or more of the foregoing instruments are not executed pursuant to this agreement, then in that event this agreement—and all other remaining instruments shall be held null and void.

Mr. Parks testified that he had completed all the acts required in the Supplemental Agreement, and the Ritcheys had done all they were required to do, with the exception of paying the balance of the purchase price. The down payment of One Hundred Thousand Dollars ($100,000.00) was paid to Mr. Parks. It was paid in one lump sum, and was not apportioned in the Supplemental Agreement.

Mr. Parks testified that he offered the business as a whole, and sold it as a whole. The apportionment was done partly for tax purposes, so that Debtors could take certain deductions for depreciation.

The Ritcheys did not testify.

## LAW

It is well established that a Debtor cannot retain the beneficial aspects of a contract while rejecting the contract's burdens. *In re Tirenational Corp.*, 47 B.R. 647, 650 (Bankr.N.D.Ohio 1985); *In re Texstone Venture, Ltd.*, 54 B.R. 54, 56 (Bankr.S.D.Tex.1985); *In re LHD Realty Corp.*, 20 B.R. 717, 719 (Bankr.S.D.Ind.1982). As was stated in *In re Holland Enterprises, Inc.*, 25 B.R. 301, 303 (E.D.N.C.1982): "[A]n executory contract or unexpired lease must be rejected *in toto.* To hold otherwise, would construe the bankruptcy law as providing a debtor in bankruptcy with greater rights and powers under a contract than the debtor had outside of bankruptcy." Consequently, if this Court finds that the agreement between Mr. Parks and the Ritcheys is one contract, the Debtors must assume or reject the entire agreement. However, the question presented here is whether there is in fact "one contract", or several "separate contracts". If the contracts are separate agreements, the Debtors may assume or reject each separate contract under § 365.

In deciding whether a contract is divisible or indivisible, the Bankruptcy Court should look to state law. *See In re Gardinier*, 831 F.2d 974, (11th Cir.1987); *Budge v. Post*, 544 F.Supp. 370, 381–382 (N.D.Tex. 1982); *In re Chemtoy Corp.*, 19 B.R. 475, 481 (Bankr.N.D.Ill.1982) (All cite to law of forum state in determining the divisibility of contracts). In deciding issues founded upon state common law, federal courts should look to the decisions of the state's highest court. If the state's highest court has not spoken to the question in controversy, a federal court must discern how the state's highest court would respond if confronted with the question. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hartford Fire Ins. v. Lawrence, Dykes, Goodenberger*, 740 F.2d 1362, 1365 (6th Cir.1984); *A & M Records, Inc. v. M.V.C. Dist. Corp.*, 574 F.2d 312, 314 (6th Cir.1978); *In re Stone*, 52 B.R. 305, 306 (Bankr.W.D.Ky.1985); *In re Sexton*, 16 B.R. 240, 242 (Bankr.D.Tenn.1981).

The most recent Ohio Supreme Court case in this area is *Material Contractors, Inc. v. Donahue*, 14 Ohio St.2d 19, 235 N.E.2d 525 (1968). The Court quoted from the first paragraph of the syllabus in *Huntington and Finke Co. v. Lake Erie Lumber & Supply Co.*, 109 Ohio St. 488, 143 N.E. 132 (1924):

Whether a contract * * * is entire or divisible depends generally upon the intention of the parties, and this must be ascertained by the ordinary rules of construction, considering not only the language of the contract, but also, in cases of uncertainty, the subject-matter, the situation of the parties and circumstances surrounding the transaction, and the construction placed upon the contract by the parties themselves. * * *

109 Ohio St. at 488, 143 N.E. at 132. In the case at bar, there are significant areas of uncertainty. Therefore, the Court should look to the surrounding circumstances in ascertaining the intentions of the parties. Based upon the Court's review of the factors quoted in *Material Contractors, supra,* it appears that the parties intended a single, indivisible contract.

Following the quote from *Huntington, supra,* the Supreme Court cites *Armstrong v. Bankers Life Assn.*, 217 Ind. 601, 29 N.E.2d 415 (1940). The decision in *Material Contractors* is specifically based on the principles set forth in *Huntington, supra,* and *Armstrong, supra,* as well as criteria established in 3A *Corbin on Contracts,* § 695–696.

The *Armstrong* court lists several rules to guide a court's decision on whether a contract is entire or severable. One subject for inquiry is whether the parties reached an agreement regarding the various items as a whole, or whether the agreement was reached by regarding each item as a unit. In the present case, the parties reached an agreement as to the whole doughnut business. However, while the contract first states a price for the entire business, the contract does apportion values to different parcels of real property, inventory, and "equipment, good will, covenant not to compete, exclusive use of the name, fixtures and other personal property excluding inventory." Discussing apportionment, the *Armstrong* court quotes:

... The test chiefly relied upon is whether the parties have apportioned the consideration on the one side to the different covenants on the other. If the consideration is apportioned, so that for each covenant there is a corresponding consideration, the contract is severable. If, on the other hand, the consideration is not apportioned, and the same consideration supports all the covenants and agreements, the contract is entire. A contract is entire when by its terms, nature, and purpose, it contemplates and intends that each and all of its parts and the consideration shall be common to each other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment.

29 N.E.2d at 420–421.

In the case *sub judice*, the Supplemental Agreement does apportion values, but it also makes all the "parts" interdependent. The *Armstrong* opinion does include an exception to the general rule on apportionment: "this [apportionment] test will not necessarily prevail over other provisions of the contract showing a contrary intent of the parties." 29 N.E.2d 421. Evidently, under *Armstrong,* the most important factor in determining whether a contract is "entire" or "divisible" is the intent of the parties. This is also the modern rule. "No formula has been devised which furnishes a test for determining in all cases what contracts are severable and what are entire. The primary criterion for determining the question is the intention of the parties ..." 17 Am.Jur.2d *Contracts* § 325.

In the older *Huntington* decision, the Ohio Supreme Court cited the "general rule" on apportionment, but did not specifically state the exception. The court quoted from 6 *Ruling Case Law* § 246 at 858:

If the consideration is expressly or by necessary implication apportioned, the contract is severable. * * * If the part to be performed by one party consists of several and distinct items, and the price to be paid by the other is apportioned to

each item to be performed, or is left to be implied under the law, such a contract will generally be held to be separable. 109 Ohio St. at 496–497, 143 N.E. at 135.

Thus, under *Huntington*, it appears that the apportionment of different values to the items listed in the Supplemental Agreement would, generally, prevent a finding that the parties entered into a single contract for the sale of the business. However, the Supplemental Agreement makes all sections of the Agreement dependent upon the completion of the parts. The *Huntington* court quoted the definition of a separable contract put forward in 2 A.L.R. 643, 645:

... One in its nature and purposes susceptible of division and apportionment, having two or more parts in respect to the matters and things contemplated and embraced by it, *not necessarily dependent upon each other;* the consideration not being single or entire as to all of its several provisions, as a whole.

109 Ohio St. at 497, 143 N.E. at 135. [emphasis added.]

In the case at bar, the parties made all the parts of the Supplemental Agreement dependent upon total completion of the terms of the Agreement. Each of the documents mentioned in the Supplemental Agreement is termed "essential to the orderly sale of the business", and they are all "null and void" if even one of the instruments is not executed. This interdependence appears to support the finding of a single contract under *Huntington's* "necessarily dependent" language. The *Huntington* court did not quote the preceding paragraph in the A.L.R. annotation:

The contract is entire if it is one bargain, and it matters not whether there is one article, or many, each having an apportioned price.

2 A.L.R. 643, 645. It is unclear whether the omission was because of a disagreement with the statement, or simply because it was not relevant to the *Huntington* case.

The *Huntington* decision contains another criteria which also supports the finding of a single, unseverable contract. The *Huntington* court noted:

Authorities agree that in determining whether a contract shall be treated as severable or as an entirety the intention of the parties will control ...

Again, it appears to this Court that the parties intended the sale of the business to be a single transaction. The entire business was offered as a whole, and not as separate individual transactions for land, inventory, equipment, and good will. The Supplemental Agreement reflects this intention by stating the price of the entire business first, and making the contract provisions interdependent. All in a single document, signed by all the parties.

The Ohio Supreme Court has addressed the issue of when transactions constitute one or several contracts in other older cases. The case that is most similar to the one presently before the Court is *Burckhardt v. Burckhardt*, 36 Ohio St. 261 (1880). The *Burckhardt* case involved the determination of whether the Plaintiff's interest in a business, including the good will, was sold to the defendant as an entirety. The *Burckhardt* court noted that the property was sold as a going concern. "The consideration was entire for all that was purchased; and there was no separation, in the contemplation of the parties, of the good will from the other property." *Id.* at 279. As part of the partnership dissolution, the business was sold by auction, the two partners in the business bidding against each other for the half of the business they did not own. After the high bid was accepted, a deed was executed to transfer the half interest in the real property. A value of Forty-five Thousand Dollars ($45,000.00) was assigned to the real property upon the advice of counsel, for tax purposes. The *Burckhardt* court held that the value assigned to the property for tax stamp purposes was not an apportionment, and that the court would not infer that a separate value had been agreed upon for the good will. The consideration named in the deed did not operate to destroy or sever the entirety of the consideration for the purchase, as fixed by the contract for dissolution sale. *Id.* at 279–280. While this case would appear to strongly support a finding by this Court of a single, indivis-

ible contract, it should be noted that there was no apportionment in the contract to competitively bid for the business, or in the bids themselves. The apportionment took place later, when the parties went to transfer the real property by deed.

An even older Ohio Supreme Court case addresses the importance to be placed on the intentions of the parties. In *Steamboat Wellsville v. Geisse*, 3 Ohio St. 333, 338 (1854), the court quoted from *Johnson v. Reed*, 9 Mass. 78, 83 [1812] "... the true intentions of the parties, as apparent in the instrument, should determine whether covenants are independent or conditional, instead of any technical rules of which the parties were totally ignorant, and the application of which would, in most cases, utterly defeat their intention." The court found the contract to have new machinery made and old machinery repaired and put in running order, was for a single purpose. The court observed that the work was not to be done part by part, but rather as a whole, the parts bearing a necessary relationship to each other. The court also noted that the provisions for payment indicated that the parties themselves regarded the agreement as an entirety. Accordingly, their intentions prevailed over any technical rules of construction, and the contract was to be taken as an entirety. *Steamboat Wellsville*, 3 Ohio St. at 338–339.

Looking at the case at bar, as this Court has previously noted, it appears that the parties intended a single transaction: the sale of the ongoing doughnut and baked goods business.

After review of these cases, it appears that most of the case law supports the finding of an indivisible contract, with one major exception. The major exception is, of course, the language in *Huntington* relative to apportionment and severability. This Court is faced with a conflict between a line of cases which hold that the parties intentions are controlling, and the ruling in *Huntington* that apportionment results in divisibility. The *Armstrong* case, cited in *Material Contractors*, states the well recognized exception to the rule set forth in *Huntington*, but the status of *Armstrong*

in relation to the older *Huntington* decision is unclear. Consequently, in simply examining existing Ohio case law, it is unclear whether the intentions of the parties or the rule in *Huntington* would be controlling when there is a conflict between the two.

The Sixth Circuit Court of Appeals considered a similar situation in *Ann Arbor Trust Co. v. North American Company for Life & Health Insurance,* 527 F.2d 526 (6th Cir.1976), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2206, 48 L.Ed.2d 818 (1976). *See also Troutman v. State Farm Fire & Cas. Co.,* 570 F.2d 658 (6th Cir.1978). The Court of Appeals held that where the Federal Court cannot be certain of the interpretation which a state Supreme Court would place on several older decisions, it was the Federal Court's obligation, in applying state law, to make a considered educated guess as to what decision would be reached by the state Supreme Court. *Id.* 527 F.2d at 527. In *Ann Arbor Trust Co.,* the latest decision had been issued seventy years earlier. In the present case, the *Huntington* decision is sixty-three years old. It is significant that this issue is one involving contract law. The law of contracts has undergone relatively rapid evolution which is partially attributable to a change in the underlying philosophy of contracts, the modern idea being that the law should reflect actual business practices and expectations.

The modern view is that the determination of whether a transaction constitutes one contract or several contracts is based on a facts and circumstances approach. What courts hope to determine is the intentions of the parties. *Williston on Contracts* (3rd ed.) § 863; 17 Am.Jur.2d *Contracts* § 325. Perhaps the most useful test in ascertaining the parties' intentions as to whether a number of promises constitute an indivisible contract, is to inquire "whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out." *United States v. Bethlehem Steel Corp.,* 315 U.S. 289, 298, 62 S.Ct. 581, 587, 86 L.Ed. 855, 862 (1942) (citing *Williston on Contracts* ).

Therefore, in addressing the case at bar, it is this Court's "considered educated guess" that the Ohio Supreme Court would not follow the narrow quotation in *Huntington,* and instead, would look to the intent of the parties. An examination of the Supplemental Agreement, the manner in which the business was offered, and the nature of the business itself, leads this Court to the conclusion that the parties intended an indivisible contract. Accordingly, this Court finds that the contract is not divisible, and must be assumed or rejected in its entirety. This Court also rejects the argument that the Supplemental Agreement is not relevant because all parts of the contract have been performed, except for payment. The Supplemental Agreement continues to affect the character of the various deeds and the Bill of Sale. The underlying intent of the parties was expressed in the Supplemental Agreement.

Finally, in passing, the Court observes that even if the land contracts were found to be separable, there is still a major hurdle for the Debtors if they wish to reject the land contracts under § 365. Many courts have held that land contracts are not "executory contracts" under the Bankruptcy Code. *See, e.g., In re Bertelsen,* 65 B.R. 654 (Bankr.C.D.Ill.1986); *In re Rehbein* 60 B.R. 436 (9th Cir. BAP 1986); *In re Thurmond,* 46 B.R. 723 (D.Ore.1985); *In re Britton,* 43 B.R. 605 (Bankr.E.D.Mich. 1984). The Court expresses no opinion as to the status of land contracts at this time.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the contract for the sale of the ongoing baked goods business from Mr. David Parks and Mello–Creme, Inc. to the Debtors, K. Lowell and Darla L. Rit-

chey, is an entirety, not divisible under Ohio law.