**In re PLUM RUN SERVICE CORP., Debtor.**

**Bankruptcy No. 93–50131.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Sept. 30, 1993.

J.B. Marshall, Jr., Portsmouth, OH, for debtor.

Richard T. Ricketts, Ricketts & Onda, Columbus, OH.

Brenda L. Dodrill, Asst. U.S. Atty., Columbus, OH.

## ORDER ON MOTION FOR ASSUMPTION OF EXECUTORY CONTRACT

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

### I. *Introduction*

The matter to be decided by this Court is the ability of the Debtor-in-possession, Plum Run Service Corp. ("Plum Run"), to assume a contract or options thereto with the United States Department of Navy ("the Navy"), thereby compelling the Navy to exercise said options against its will. This Court is vested with jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

The contract in question is the Base Operational Support Contract entered between Plum Run and the Navy ("the BOS Contract"). It is undisputed that the "base period" for the BOS Contract was from October 1, 1992 through September 30, 1993. The solicitation for bids for the BOS Contract stated that "Offers shall be submitted for the performance of work for a period of one year plus four option years."

The BOS Contract was comprised of eleven different functions to be performed by the successful bidder. These functions, in general, provided base maintenance services for the U.S. Naval base in Guantanamo Bay, Cuba. The Debtor asserts that it was induced to bid on the BOS Contract under the assumption that the four option years would be exercised by the Navy; that with

the exception of the housing maintenance portion of the BOS contract, Plum Run performed satisfactorily under the BOS contract, especially after filing Chapter 11 in January 1993; and that the Navy refused to exercise the option due solely, or in significant part to the Chapter 11 filing by Plum Run, in violation of 11 U.S.C. § 525. Plum Run thereby asserts a right to assume the contract, together with all options, under 11 U.S.C. § 365.

The Navy argues that Plum Run experienced numerous problems, unrelated to the bankruptcy filing per se, from the inception of its performance under the BOS Contract continuing to the present date. The Navy argues that it had the unilateral right to decide whether the option would be exercised, and chose not to exercise the option due to the fact that Plum Run had not performed well under the BOS Contract, and due to the fact that there was no viable option that could be exercised after the housing maintenance portion of the contract was terminated for cause.[1]

The issues before the Court are complex. This complexity was exacerbated by the fact that Plum Run did not obtain its expedited hearing date with respect to this matter until a mere three days prior to the expiration of the base period of the BOS contract. The Court notes that this timing was certainly not caused by special counsel for Plum Run who did an admirable job in preparing this difficult case on such short notice.

## II. *No Viable Option Remains For Purposes of Assumption*

■ The initial inquiry for this Court is whether the option to extend the BOS Contract is an executory contract, subject to the provisions of 11 U.S.C. § 365, and therefore subject to assumption by Plum Run. Under current case law, contract options are indeed executory in nature, and thereby subject to the province of § 365. However, this case is not quite as clear as that. Here, the Navy obtained relief from the automatic stay to allow for termination of the housing maintenance portion of the BOS Contract, according to the evidence, constituting approximately 20% of the total BOS Contract. The Agreed Order, entered by this Court on April 7, 1993, granted the Navy's motion to enable the Navy to pursue available administrative remedies, and partially terminate the BOS Contract.[2]

■ The Navy cites pertinent cases indicating that an executory contract must be assumed or rejected by the Debtor in its entirety, and cannot be dealt with in a piecemeal fashion. *See, NLRB v. Bildisco (In re Bildisco & Bildisco)*, 465 U.S. 513, 531–32, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984); *In re Ritchey*, 84 B.R. 474, 476 (Bankr.N.D.Ohio 1988). Any other ruling would allow a Debtor to pick and choose portions of the contract it considered profitable, while rejecting any burdens considered onerous. This is simply not the intent of § 365. However, although not cited by counsel, the Court has also reviewed cases holding that a single writing may contain more than one contract for § 365 assumption purposes. *See, e.g., In re Gardinier, Inc.*, 831 F.2d 974 (11th Cir.1987), *cert. denied*, 488 U.S. 853, 109 S.Ct. 140, 102 L.Ed.2d 112 (1988); *Matter of Holly's, Inc.*, 140 B.R. 643, 681 (Bankr.W.D.Mich.1992). To decide whether a contract is divisible for

---

1. The Agreed Order relating to the housing maintenance portion of the contract entered, April 7, 1993, granted the Navy relief from the automatic stay imposed by 11 U.S.C. § 362, to allow the Navy to proceed with its administrative remedies with respect to terminating this portion of the contract.

2. Plum Run initially opposed the Navy's motion for relief from the automatic stay, and requested that "the Navy be ordered to exercise appropriate option extensions as it relates to those portions of the contract which Debtor retains in order for successful completion of the Chapter 11 Plan." Certainly, as of March 24, 1993 when this opposition was signed, Plum Run knew that it was interested in compelling the Navy to exercise the option. Counsel should have been aware that the appropriate way to do this would have been through a timely motion to assume pursuant to 11 U.S.C. § 365. The Court is aware that § 365 permits the Debtor to assume, in a Chapter 11 proceeding regarding nonresidential real estate, an executory contract at any time prior to confirmation. However, the eleventh hour timing (with respect to termination of the base contract) of this proceeding has been disadvantageous to all participants.

assumption purposes, the Court should look to state law. *Ritchey*, 84 B.R. at 476. In fact, the courts in *Holly's* and *Gardinier* noted a three-factor test to decide whether agreements set forth in a single document would be considered separate for § 365 assumption-rejection purposes: (1) the differing nature and purpose of the agreement; (2) the separate and distinct consideration for the agreement; and (3) the noninterrelatedness of the obligations of the parties to the document. *Holly's*, 140 B.R. at 681; *Gardinier*, 831 F.2d at 976.

■ With respect to the law of the State of Ohio, the case of *Material Contractors, Inc. v. Donahue*, 14 Ohio St.2d 19, 235 N.E.2d 525 (1968) quoted from, and accepted the ruling of the case of *Huntington and Finke Co. v. Lake Erie Lumber & Supply Co.*, 109 Ohio St. 488, 143 N.E. 132 (1924):

> Whether a contract ... is entire or divisible depends generally upon the intention of the parties, and this must be ascertained by the ordinary rules of construction, considering not only the language of the contract, but also, in cases of uncertainty, the subject-matter, the situation of the parties and the circumstances surrounding the transaction, and the construction placed upon the contract by the parties themselves.

The Court in *Material Contractors, Inc.* also relied on the case of *Armstrong v. Bankers' Life Assn.*, 217 Ind. 601, 29 N.E.2d 415 (1940) which listed several rules on the issue of severability. In particular, the *Armstrong* court inquired as to whether the parties reached an agreement regarding the various portions of the contract as a whole, or whether the agreement was reached by regarding each individual item as a separate unit. This Court believes that "determination of whether a transaction constitutes one contract or several contracts is based on a facts and circumstances approach. What courts hope to determine is the intentions of the parties." *Ritchey*, 84 B.R. at 479, citing *Williston on Contracts* (3rd ed.) § 863; 17 Am. Jur.2d *Contracts* § 325.

■ After weighing the testimony, considering the depositions, and reviewing the documents provided as exhibits by the parties hereto, this Court does not believe that credible evidence has been presented that would substantiate the ability of the Debtor to consider the BOS Contract eleven different contracts, each capable of assumption or rejection under § 365. The Navy presented evidence, and the Court has considered the testimony and credibility of the Navy's witnesses, that the contract, although comprised of eleven functions, was a single, indivisible agreement, with no appropriate way to segregate the functions into independent, separately assumable contracts.

Under the tests and cases cited above, and in accordance with Ohio law, it is the determination of this Court that the parties intended to consider the BOS Contract as a single, interdependent contract, not as eleven divisible contracts. It appears undisputable that the parties reached the agreement regarding the various items as a whole, as opposed to reaching an agreement regarding each item individually as a unit. Although there are estimated price breakdowns, the testimony indicated that these breakdowns were nothing more than estimates to assure that the contractor was realistically bidding on the contract as a whole. Such breakdown was not intended to create a steadfast pricing for the individual functions to be performed under the BOS Contract.

Applying the *Holly's* and *Gardinier* test to this case, the different contract functions, in *some* instances, are arguably of a "differing nature and purpose" sufficient to allow independent assumption and rejection. The consideration for the functions was, however, not separate and distinct to the extent that the bankruptcy court could compel the Navy, under the purpose and form of its contract, to accept the individually apportioned cost items of the overall contract for option extension purposes. In addition, the Court believes the obligations of the parties to the BOS Contract were clearly interrelated. The Navy also presented evidence, and the Court carefully

considered the weight of this evidence, that with such a fundamental change in the contractual relationship between Plum Run and the Navy (after termination of the housing maintenance portion of the contract), it would violate the Navy's competitive bidding obligation to exercise "80% of an option".

With respect to the requirements of § 365, in order to assume a contract, the Debtor must cure or provide adequate assurance that any default would be cured; compensate or provide adequate assurance for any actual pecuniary loss to a party other than the Debtor resulting from the default; and provide adequate assurance of future performance under the contract. Here, the default and subsequent termination of the housing maintenance portion of the contract is, without question, a default incapable of cure. This would provide additional support for the Court to prevent the Debtor from assuming the contract.

Based on the foregoing, it is the ruling of this Court that no viable option remains for purposes of assumption under § 365. However, for the reasons set forth below, even if there had been a viable option, this Court cannot find that the Navy violated § 525 in refusing to exercise the relevant contract options.

### III. The Evidence Does Not Support Allegations of Discriminatory Treatment or Bad Faith by the Navy

Debtor argues that the Fifth Circuit case of *In re Exquisito Services, Inc.*, 823 F.2d 151 (5th Cir.1987), prohibits a governmental agency from refusing to exercise contract options with a bankrupt contractor on a discriminatory basis. The Navy presented evidence that it would not exercise the BOS Contract options due to Plum Run's repeated unsatisfactory performance under the BOS Contract.[3]

Based on, among other factors, a weighing of the testimony concerning the default and subsequent termination of the housing maintenance portion of the contract, the Debtor's prepetition inability to obtain payment and performance bonds, and other performance problems as developed and testified to by Navy personnel, there is simply insufficient evidence for this Court to rule that the Navy acted in bad faith in refusing to exercise the option (assuming that there was any viable option to exercise); or that the Navy acted solely due to, or even, as Plum Run would argue, primarily due to, on the grounds of, or significantly due to Plum Run's bankruptcy filing. In addition, the Navy's testimony that certain functions from the Plum Run BOS Contract were to be taken "in house", especially when combined with the termination of the housing maintenance portion of the contract, provided an ample basis for the Navy to refuse to exercise an option based on the significant changes to the underlying BOS Contract.[4]

For these reasons, this Court has determined that insufficient credible evidence exists to support a finding that the Navy unfairly discriminated against Plum Run in violation of § 525 in refusing to exercise the relevant option.

### IV. The Anti–Assignment Act Prohibits the Debtor From Assuming the Contract or Options

■ Although the parties failed to raise the issue before the Court, there appears to be authority that the Debtor is further unable to assume the contract option in

---

**3.** Some, but not all of the bases on which the Navy relied may have been improper, and may provide the foundation for a cause of action for breach of contract, violation of the automatic stay and improper set-offs in violation of the Bankruptcy Code. Despite the Navy's assertions, the Court notes that the provisions of a contract, as they may conflict with the requirements of the Bankruptcy Code, cannot and will not permit any party, including the Navy, from violating the automatic stay or otherwise violating the requirements of the Bankruptcy Code.

**4.** No evidence was presented to indicate that Plum Run was prohibited from bidding on the remaining portions of the BOS contract when they were subsequently let by the Navy. Refusal to allow Plum Run to bid on these remaining portions of the contract due to Plum Run's status as a Debtor-in-possession would certainly have violated § 525, and could have been enjoined had Plum Run brought that matter before this Court on a timely basis.

question pursuant to 11 U.S.C. § 365(c)(1)(A). That section prohibits the trustee, or debtor-in-possession, from assuming an executory contract if applicable law excuses a party other than the debtor from accepting performance from an entity other than the debtor. 41 U.S.C. § 15 is known as the Anti–Assignment Act, and prevents the transfer of government contracts from the original contracting party to third parties.

At first blush, the significance of this law to the issues before the Court may be lost. However, case law clearly notes the distinction between a pre-petition debtor and the debtor-in-possession. To allow a debtor-in-possession to assume a contract, in essence, creates an assignment of the contract from the prepetition debtor to the debtor-in-possession. As noted by the Third Circuit in *Matter of West Electronics, Inc.*, 852 F.2d 79, 83 (3rd Cir.1988), § 365(c)(1) creates a hypothetical test: Under applicable law, could the government refuse performance from an entity *other* than the debtor or the debtor-in-possession? Relevant inquiry is not whether 41 U.S.C. § 15 precludes an assignment from the prepetition debtor to the debtor-in-possession, but whether it would foreclose an assignment from the prepetition debtor to any other contractor. *West Electronics*, 852 F.2d at 83. This reasoning was accepted by the Court in *In re Carolina Parachute Corp.*, 108 B.R. 100 (M.D.N.C.1989) which noted that both the performance of the debtor as well as the debtor's financial status are *irrelevant* inasmuch as the plain language of 41 U.S.C. § 15 precludes assumption of a government contract by a debtor-in-possession.[5] Other cases have ruled consistently with the *West Electronics* case. *See, e.g., In re Adana Mortgage Bankers, Inc.*, 12 B.R. 977 (Bankr.N.D.Ga.

1980); *In re Pennsylvania Peer Review Organ., Inc.*, 50 B.R. 640 (Bankr.M.D.Pa.1985). The Court would also note that the *Exquisito* case made no reference to 41 U.S.C. § 15; and being decided prior to the *West Electronics* case, the Fifth Circuit may not have known that the Anti–Assignment Act was critical to determining that case.[6]

### V. *Conclusion*

For all of the foregoing reasons, the Court holds that Plum Run Service Corp.'s Motion for Assumption of Executory Contract is DENIED.

IT IS SO ORDERED.

---

5. The District Court decision in *Carolina Parachute* was affirmed in part and vacated in part inasmuch as the bankruptcy court order confirming the contractor's plan of reorganization was *res judicata* as to the government, which did not object to the proposed plan. *Department of Air Force v. Carolina Parachute*, 907 F.2d 1469 (4th Cir.1990). However, the reasoning of the District Court with respect to the Anti–Assignment Act is sound.

6. It is interesting to note that the dissent in *Exquisito* indicated that § 525 does not apply to government contracts, and that Congress' failure to specifically include government contracts in the clear language of § 525 must have been intentional. This dissent may be bolstered by consideration of 41 U.S.C. § 15 and the cases cited above.