

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-27-2007

# In Re:Nickels Midway

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2671

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"In Re:Nickels Midway " (2007). *2007 Decisions.* Paper 191.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/191

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-2671

_____

IN RE: NICKELS MIDWAY PIER, LLC,

Debtor

WILD WAVES, LLC,

Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 05-cv-05514)
District Judge: Honorable Joseph E. Irenas

_____

Argued September 26, 2007

Before: AMBRO, JORDAN and ROTH, Circuit Judges

(Opinion filed: November 27, 2007)

Arthur J. Abramowitz, Esquire (Argued)
Jerrold N. Poslusny, Jr., Esquire
Cozen & O'Connor
457 Haddonfield Road
Liberty View, Suite 300
Cherry Hill, NJ   08002

David M. Doret, Esquire
Cozen & O'Connor
1900 Market Street
Philadelphia, PA   19103

        Counsel for Appellant

Michael Z. Zindler, Esquire
Brian W. Hofmeister, Esquire (Argued)
Teich, Groh, Frost & Zindler
691 State Highway 33
Trenton, NJ   08619

      Counsel for Appellee

-----------

OPINION

-----------

AMBRO, Circuit Judge

Wild Waves, LLC ("Wild Waves") appeals the decision of the District Court that debtor Nickels Midway Pier, LLC ("Nickels") could reject its agreement to sell a pier property to Wild Waves.  It claims the sale agreement was repudiated prepetition by Nickels, and therefore was not executory and hence not eligible for rejection.  Even were rejection of the sale agreement appropriate, Wild Waves maintains it was denied the protections of § 365(i) of the Bankruptcy Code for putative purchasers of real property.  Wild Waves also argues that the District Court erred by holding that rejection of the sale agreement under federal law extinguishes its state-law claim to specific performance, as monetary damages are not adequate.[1]  For the reasons noted below, we affirm.

-----------

[1]For reasons that are unclear, Wild Waves makes these arguments in a sequence different from ours.  It puts first its § 365(i) argument that it possesses the pier pursuant to the sale agreement, followed by the contention that its state-law right to specific performance is not a claim under the Bankruptcy Code, and then reverts back to whether the sale agreement is executory.  Perhaps Wild Waves prioritizes the relative strength it perceives as to those arguments, or perhaps its lays out in order what it really wants.

2

## I. Procedural Background

In 2001 Nickels filed suit against Wild Waves in New Jersey Superior Court, Chancery Division, alleging that Wild Waves had failed to perform its obligations under a lease between the two parties pertaining to an entertainment pier in Wildwood, New Jersey (the "Pier"). Wild Waves counter-claimed, contending that Nickels had failed to perform its obligations under an oral contract for the sale of the Pier and sought the remedy of specific performance. That action remained pending in December 2003 when Nickels filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* Nickels moved to reject the lease of the Pier under 11 U.S.C. § 365(a).[2] The Bankruptcy Court did not resolve the motion at that time, but granted relief from the automatic stay to permit the New Jersey Superior Court to determine whether the parties had agreed to the sale of the Pier.

The Superior Court understood its charge to be to determine whether "an enforceable oral contract [of sale] existed." It answered yes to that question. It also concluded that the terms of that oral agreement were included in a document negotiated, but not signed, by the parties, and that the agreement to lease and to sell the Pier was a

---

[2]Section 365(a) refers exclusively to the power of a trustee to reject or assume executory contracts or leases. *See* 11 U.S.C. § 365(a) (providing in relevant part that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor"). However, a "debtor in possession" has all but a very limited set of the rights and powers of a trustee, and a debtor is considered a "debtor in possession" when, as in this case, no trustee has been appointed. *See* 11 U.S.C. § 1107 (describing powers and rights of a "debtor in possession"); 11 U.S.C. § 1101(1) (defining "debtor in possession").

single, integrated contract:

> I am, therefore, satisfied, beyond any hesitation, that Nickels Midway Pier and Wild Waves had reached an agreement that would require Wild Waves to lease a portion of the Pier for a three year period and thereafter purchase it in accordance with the terms of [the unexecuted agreement to sell the Pier]. I am further certain that the lease and sale were two aspects of a thoroughly integrated agreement. Although only the portion of [the] agreement respecting the lease was committed to an executed writing, I remain absolutely convinced that these parties intended to be bound as to the sale, even in the absence of an executed writing.

Counsel for Nickels stated at oral argument that Nickels had sought leave to file an interlocutory appeal of the Superior Court's decision, but that this request was denied.

In light of the Superior Court's conclusion, the Bankruptcy Court construed Nickels' motion to reject as seeking to reject a single, comprehensive agreement. The Bankruptcy Court concluded that Nickels is entitled to reject this agreement pursuant to Section 365(a) because it remains executory, that such a rejection was the product of reasonable business judgment, and that Wild Waves asserted a claim that can be discharged in bankruptcy. The Bankruptcy Court also concluded that Wild Waves is a purchaser in possession of the Pier and therefore is entitled to the protections provided by Bankruptcy Code § 365(i).[3]

---

[3]This provision provides in relevant part:
   (1) If the trustee rejects an executory contract of the debtor for the sale of real property . . . under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property . . . .
   (2) If such purchaser remains in possession –
       (A) such purchaser shall continue to make all payments due under such contract, but may . . . offset against such payments any damages occurring

4

The parties cross-appealed to the District Court. It disagreed with the Bankruptcy Court on the threshold question of how to treat, for the purposes of bankruptcy law, the agreement to lease and to sell the Pier. It concluded that the Bankruptcy Court should have construed the agreement to lease and to sell the Pier as comprising two independent contracts or, in the alternative, as divisible portions of an integrated agreement. The sale agreement aspect was executory, and thus could be rejected by Nickels. Moreover, Wild Waves was not entitled to the protections provided by Section 365(i) because it was not a purchaser in possession but rather was in possession of a portion of the Pier under its lease rights. The District Court remanded the case to the Bankruptcy Court with instructions to consider independently the attempt to reject the agreements to lease and to sell the Pier. Finally, the District Court affirmed the Bankruptcy Court's "determination that Wild Waves' claim for specific performance of the oral contract for sale is a claim within the meaning of . . . [Bankruptcy Code] § 101(5), and thus can be discharged in a bankruptcy proceeding." Dist. Ct. Op. at 23. Wild Waves timely appeals to us.[4]

---

after the date of the rejection of such contract caused by the nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and

(B) the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract.

11 U.S.C. § 365(i).

[4]We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) & 1291. Our review is plenary. *Sovereign Bank v. Schwab*, 414 F.3d 450, 452 n.3 (3d Cir. 2005). On appeal from the

## II. Discussion

### A. Is the Sale Agreement Executory and thus Subject to Being Rejected?

Before we consider whether the oral sale agreement is executory, we deal with the preliminary issue of whether the lease and the sale agreement are non-divisible aspects of the same contract, divisible segments of a single contract, or independent contracts. The answer lets us know if we can analyze the oral sale agreement or whether it is bundled with the lease so inextricably that we must consider them together. Once we determine this issue, how does it affect, if at all, whether we have in place the predicate for a contract that can be rejected under § 365(a); in other words, is the contract executory?

Under New Jersey law, "a contract is said to be divisible when performance is divided in two or more parts with a definite apportionment of the total consideration to each part." *Integrity Flooring v. Zandon Corp.*, 32 A.2d 507, 509 (N.J. 1943). The divisibility of a contract "depends upon the intention of the parties as gathered from the agreement itself and the circumstances surrounding it." *Id.* As the District Court explained, the portions of the parties' agreement pertaining to the lease and the purchase of the Pier are supported by separate consideration. Neither agreement was made contingent upon performance of the other, nor are rental payments considered payments toward the sale price. Accordingly, we affirm the District Court's conclusion that, to the

District Court's decision in its bankruptcy appellate capacity, we exercise the same standard of review as the District Court, *id.*; it reviewed the Bankruptcy Court's legal determinations *de novo* and its factual determinations for clear error.

extent that it treated the agreement between the parties as a single contract, the

Bankruptcy Court should have treated that contract as divisible into separate portions

relating to the lease and the sale of the Pier.[5]  Thus the agreement to sell the Pier is

considered alone, as we follow the approach of other courts that have considered divisible

portions of a contract separately in deciding whether a contract remains executory.  *See,

e.g., In re Wolflin Oil, L.L.C.*, 318 B.R. 392, 399 (Bankr. N.D.Tex. 2004);  *Matter of GP

Exp. Airlines, Inc.*, 200 B.R. 222, 228-29 (Bankr. D.Neb. 1996);  *In re Plum Run Serv.

Corp.*, 159 B.R. 496 (Bankr. S.D.Ohio 1993).

A sale contract must be executory to permit rejection under Bankruptcy Code §

365(a).  Under *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36,

39 (3d Cir. 1989), executory contracts are those "under which the obligation of both the

bankrupt and the other party to the contract are so far unperformed that the failure of

either to complete performance would constitute a material breach excusing performance

of the other."  That is the case here, for the failure of Nickels to sell the Pier to Wild

Waves would no doubt breach materially the sale agreement.

Wild Waves counters that the agreement to sell the Pier no longer is executory

because it was allowed under New Jersey law the option of treating that agreement as

---

[5]Because we affirm this conclusion of the District Court, we need not consider its alternative conclusion that the Bankruptcy Court should have treated the agreement between the parties as consisting of two separate contracts for the Pier's lease and sale. Indeed, if we were to consider that alternative, we would find it difficult to ignore the findings of intent that the Superior Court laid out in its careful and thorough conclusions following trial.

terminated after Nickels' alleged anticipatory repudiation and it exercised that option.

Merely alleging anticipatory breach is not enough, as no one of the Superior Court, the

Bankruptcy Court, or the District Court concluded that the sale agreement in fact was

repudiated by Nickels in anticipation of a possible sale.[6]  Accordingly, we have no

support for the argument that the sale agreement does not remain executory.

**B.      Is Wild Waves Entitled to the Protections of § 365(i) of the Bankruptcy Code?**

Having decided that Nickels is entitled under Bankruptcy Code § 365(a) to reject

the agreement to sell the Pier, we next consider whether Wild Waves is entitled to the

protections provided by § 365(i).  We agree with the District Court that Wild Waves was

in possession of the Pier under the lease portion of the agreement between the parties.

Because it has not made payments toward the purchase of the Pier, Wild Waves is not in a

position to "continue to make all payments due" within the meaning of § 365(i)(2)(A),

and is not a purchaser in possession under § 365(i)(1).  Accordingly, we affirm the

conclusion of the District Court that Wild Waves is not entitled to the protections of §

365(i).[7]

---

[6]Nickels argues unpersuasively that it could not have anticipatorily breached the agreement to sell the Pier because it did not acknowledge the existence of such a contract. We will not add the acknowledgment of a contract to the elements of an anticipatory repudiation claim.  *See Ross Sys. v. Linden Dari-Delite, Inc.*, 173 A.2d 258, 264-65 (N.J. 1969) (describing requirements for anticipatory repudiation under New Jersey law).

[7]As that Court concluded, the Bankruptcy Court should consider on remand the availability to Wild Waves of the protections provided by other Code sections, including § 365(h), which pertains to the rejection of an unexpired lease of real property if that rejection attempt by Nickels goes forward on remand.

**C.** **Is Wild Waves' Action for Specific Performance a Claim Under the**

   **Bankruptcy Code?**

Wild Waves argues that its action for specific performance of the agreement to sell the Pier cannot be characterized as a claim within the meaning of Bankruptcy Code § 101(5) and thus is not subject to discharge in bankruptcy. Section 101(5)(B) includes the "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." Interpreting this provision in light of *Ohio v. Kovacs*, 469 U.S. 274 (1985), we have explained that equitable relief may be treated as a claim for purposes of the Bankruptcy Code when granting monetary damages is a "viable alternative." *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 305-06 (3d Cir. 1999). As compensatory, or "benefit of the bargain," damages available under New Jersey law present an alternative to equitable relief under the facts of this case, *see Donovan v. Bachstadt*, 453 A.2d 160, 165 (N.J. 1982), we conclude, along with the District Court, that Wild Waves asserts a claim within the meaning of Bankruptcy Code § 101(5)(B).[8]

*     *     *     *     *

We affirm the order of the District Court.

---

   [8]We are not suggesting that money damages are the equivalent of realty or are a viable alternative in every case. We merely note that when damages can be considered an alternative to specific performance, as we believe they can under the circumstances presented here, the Bankruptcy Code provides a mechanism for addressing the claim for relief.